**Gladys G. SMITH, Administratrix of the Estate of Ray L. Smith, Plaintiff–Appellant and Cross–Appellee,**

v.

**DEPARTMENT OF HUMAN SERVICES, STATE OF OKLAHOMA, Defendant–Appellee and Cross–Appellant.**

Nos. 87–2054, 87–2111.

United States Court of Appeals, Tenth Circuit.

June 2, 1989.

E.V. Spadafora of Spadafora & Neugebauer, Oklahoma City, Okl., for plaintiff–appellant and cross–appellee.

Richard W. Freeman, Jr., Asst. Gen. Counsel (Charles Lee Waters, Gen. Counsel, David A. Brown, Asst. Gen. Counsel, with him on the brief), Dept. of Human Services, Oklahoma City, Okl., for defendant–appellee and cross–appellant.

Before BALDOCK, BRORBY and EBEL, Circuit Judges.

BALDOCK, Circuit Judge.

On August 20, 1982, Ray L. Smith (Smith), then 59 years of age, was terminated by his employer, the Oklahoma Department of Human Services (DHS). Smith's appeal of that termination decision was dismissed by the Oklahoma Ethics & Merit Commission (Commission). Smith sought review of the Commission's decision in Oklahoma state court, requesting that he be reinstated to his former position and receive back pay. Prior to the rendering of the state court decision, he received from the Equal Employment Opportunity Commission (EEOC) a letter giving him the right to sue the DHS in federal court for age discrimination under the ADEA. Smith filed his complaint in federal court on March 29, 1984, seeking reinstatement and back pay as in state court, along with attorney fees and costs of the federal action. Smith also requested liquidated damages, represented by an amount equal and in addition to actual damages, as provided for in cases of "willful" violations of the ADEA. *See* 29 U.S.C. §§ 626(b) & 216(b).

In April 1984, Smith was granted judgment in Oklahoma state court, which ordered Smith reinstated to his former position and awarded him all back pay and benefits accruing since his discharge. *Smith v. Oklahoma Ethics and Merit Comm'n,* No. C–82–116 (D.Ct. of Alfalfa County, May 15, 1984). In September 1984, the federal district court stayed the proceedings under the ADEA pending the appeal of the Oklahoma state court decision. The Oklahoma Court of Appeals affirmed, and certiorari was denied by the Oklahoma Supreme Court. *Department of Human Servs. v. Smith,* No. 62,360 (Okla. Ct.App. July 30, 1985), *cert. denied,* No. 62–360 (Okla. Nov. 13, 1985). After the mandate of the Oklahoma Supreme Court issued, the DHS reinstated Smith to his employment and paid him gross back pay of $56,243.04.[1] Rec. vol. I, doc. 25 at 2 n. 2. The stay of the federal action was vacated in April 1986. Smith died in January 1987, and the federal district court entered an

---

**1.** The Oklahoma state trial court also awarded Smith $8,378.56 in post-judgment interest and $11,200 in attorney fees. The award of attorney fees is currently on appeal to the Oklahoma Supreme Court.

order in May 1987, substituting Gladys Smith (Mrs. Smith), the administratrix of Smith's estate, as plaintiff.

Although Smith received actual damages in state court in excess of that requested in federal court on the basis of the same discriminatory action,[2] he continued to pursue an award of liquidated damages under the ADEA in federal court.[3] After the federal district court disposed of a number of issues on various motions for partial summary judgment,[4] trial was had to the court on the remaining issue of whether the DHS had acted willfully in terminating Smith, thereby giving rise to liability for liquidated damages. Smith introduced into evidence a set of stipulated facts and rested. The trial court ruled in favor of the Oklahoma DHS, finding that Smith had not met his burden of showing willfulness as required to support an award of liquidated damages. We have jurisdiction of this appeal pursuant to 28 U.S.C. § 1291.

According to Mrs. Smith, the trial court's conclusion that the DHS did not act willfully is unsupported either by the relevant facts or the applicable law. The DHS seeks affirmance of the trial court's ruling on willfulness, but in the event that that decision is not affirmed, asserts four issues on cross-appeal. First, the DHS argues that the ADEA action in federal court was barred by the doctrine of *res judicata*, based on the prior state court proceedings. Second, the DHS contends that the Eleventh Amendment immunizes the DHS from a suit for damages under the ADEA. Third, according to the DHS, Smith's failure to recover actual damages in the federal action precludes an award of liquidated damages. Lastly, the DHS asserts that Smith's claim for liquidated damages did not survive his death. As we agree with this last contention, we need not address the other issues. We affirm the judgment of the district court as hereafter modified and remand to the district court with an order to dismiss Smith's complaint.

The question of the survival of an action grounded in federal law is governed by federal common law when, as here, there is no expression of contrary intent. *James v. Home Constr. Co.*, 621 F.2d 727, 729 (5th Cir.1980); 7C C. Wright, A. Miller & M. Kane, Federal Practice and Procedure § 1952 at 526 (1986). The general rule under the federal common law is that an

**2.** Smith sought $25,213 in back pay in the federal action, covering the period from the date of his termination until the filing of the federal action, along with $43.63 per day for each additional day until his reemployment by the DHS. Rec. vol. I, doc. 25 at 3 n. 3.

**3.** Smith argued that upon a showing of willfulness, he was entitled to liquidated damages equal to an amount represented by the actual damages compensable under the ADEA. The DHS countered by arguing that the state court recovery of actual damages must be offset against the lesser amount requested in federal court, thereby leaving no actual damages upon which to predicate an award of liquidated damages. *See, e.g., Fariss v. Lynchburg Foundry,* 769 F.2d 958 (4th Cir.1985) (pension benefits received upon wrongful termination of employee must be offset against claimed actual loss from termination prior to calculation of liquidated damages; liquidated damages should be assessed only on actual pecuniary loss). The trial court chose not to follow cases such as *Fariss,* as each of the cases cited by Smith involved an offset of amounts received in actual mitigation of a plaintiff's pecuniary loss, while Smith's state court award represented the amount of his actual loss, but did not diminish it. Rec. vol. I,

doc. 25 at 8. Thus, having already found the DHS liable for violating the ADEA, *see infra* n. 5, although not awarding actual damages, the trial court allowed Smith to proceed on his claim solely for liquidated damages, to be measured by his actual pecuniary loss as recovered in the state court action. *Id.* at 9.

**4.** In an order dated September 25, 1984, the trial court ruled that Smith's action was not precluded by the doctrine of *res judicata* in light of the previous state court litigation, and that the Eleventh Amendment did not bar a claim for actual and liquidated damages against the Oklahoma DHS. Rec. vol. I, doc. 12. The trial court's January 27, 1987, order granted summary judgment in favor of Smith on the issue of the DHS's liability for violation of the ADEA, and in favor of the defendant on the appropriate amount of actual damages recoverable by Smith. Rec. vol. I, doc. 25. The trial court held that Smith failed to prove a claim to any actual damages not already recovered in state court, and therefore awarded no actual damages. *Id.* On April 13, 1987, the trial court denied a motion by the DHS to vacate the grant of summary judgment in favor of Smith regarding the DHS's liability for its violation of the ADEA. Rec. vol. I, doc. 35.

action for a penalty does not survive the death of the plaintiff. *Schreiber v. Sharpless,* 110 U.S. 76, 80, 3 S.Ct. 423, 424, 28 L.Ed. 65 (1884); *Smith v. No. 2 Galesburg Crown Fin. Corp.,* 615 F.2d 407, 414 (7th Cir.1980), *overruled on other grounds, Pridegon v. Gates Credit Union,* 683 F.2d 182, 194 (7th Cir.1982). The issue here, then, is whether Smith's action for liquidated damages under the ADEA is penal such that it does not survive his death.

A number of courts have considered whether actions under various federal statutes survive the death of the plaintiff. *See, e.g., Kilgo v. Bowman Transp., Inc.,* 789 F.2d 859, 876 (11th Cir.1986); *In re Wood,* 643 F.2d 188, 190 (5th Cir.1980); *James v. Home Constr. Co.,* 621 F.2d 727, 729 (5th Cir.1980); *Smith v. No. 2 Galesburg Crown Fin. Corp.,* 615 F.2d 407, 414 (7th Cir.1980); *Murphy v. Household Fin. Corp.,* 560 F.2d 206, 208 (6th Cir.1977); *Khan v. Grotnes Metalforming Systems, Inc.,* 679 F.Supp. 751, 756 (N.D.Ill.1988); *Asklar v. Honeywell, Inc.,* 95 F.R.D. 419, 422 (D.Conn.1982). Typically, a court is required to infer from a reading of the relevant statute and its history whether a cause of action is penal or remedial in nature. In doing so, most courts employ a test first articulated by the Sixth Circuit in *Murphy v. Household Finance Corp.,* 560 F.2d 206 (6th Cir.1977). There, distilling a discussion of penal laws found in *Huntington v. Attrill,* 146 U.S. 657, 13 S.Ct. 224, 36 L.Ed. 1123 (1892), the court developed a three-factor analysis requiring an assessment of "1) whether the purpose of the statute was to redress individual wrongs or more general wrongs to the public; 2) whether recovery under the statute runs to the harmed individual or to the public; and 3) whether the recovery authorized by the statute is wholly disproportionate to the harm suffered." *Murphy,* 560 F.2d at 209.

Applying *Murphy*'s analysis, at least two courts have held that an action under the ADEA survives the death of the plain-

tiff. *Khan,* 679 F.Supp. at 756; *Asklar,* 95 F.R.D. at 424. According to those courts, "[w]hile the ADEA does provide for liquidated damages, ... its primary purpose is to compensate, and where appropriate reinstate, individuals who have suffered employment discrimination because of their advanced age." *Asklar,* 95 F.R.D. at 423 (*quoted in Khan,* 679 F.Supp. at 756). Further, according to those courts, the recovery under the ADEA redresses individual wrongs, runs to the individual wronged, and is not disproportionate to the harm suffered.[5] *Id.*

Both cases, however, are distinguishable. *Asklar* involved an allegation of willful discrimination, and thus apparently involved a claim for liquidated damages, but was decided before the Supreme Court's characterization of liquidated damages as punitive in *Trans World Airlines, Inc. v. Thurston,* 469 U.S. 111, 105 S.Ct. 613, 83 L.Ed.2d 523 (1985) (discussed *infra*). Additionally, the court's holding in *Asklar,* 95 F.R.D. at 423, that the ADEA's primary purpose is remedial, although providing for liquidated damages claims, is not applicable to a situation involving a claim only for liquidated damages, especially in light of *Thurston. Khan* is inapposite because, while decided after *Thurston,* it makes no reference to any willful violation of the ADEA, or any claim for liquidated damages. Unlike the instant case, then, *Khan* apparently considers only the compensation and reinstatement functions of the ADEA, and cites *Asklar* for the proposition that the ADEA is primarily remedial in nature.

Further, and most significantly, we are not required to apply the *Murphy* factors in order to *infer* the nature of a liquidated damages claim. In *Trans World Airlines, Inc. v. Thurston,* 469 U.S. 111, 105 S.Ct. 613, 83 L.Ed.2d 523 (1985), the Supreme Court considered the issue of the appropriate standard by which to determine the "willfulness" needed to support an award

---

**5.** In *Fariss v. Lynchburg Foundry,* 769 F.2d 958 (4th Cir.1985), involving a claim under the ADEA for reinstatement, backpay, and punitive damages, the court stated in a footnote that a claim under the ADEA survives the death of the

original plaintiff. *Id.* at 962 n. 3. *Fariss* was decided before *Thurston,* however, and merely cites, without discussion, *Asklar,* distinguished above.

of liquidated damages under the ADEA. The Court stated that "[t]he legislative history of the ADEA indicates that Congress intended for liquidated damages to be punitive in nature." *Id.* at 125, 105 S.Ct. at 623. According to the Court, the original administration bill incorporated § 16(a) of the Fair Labor Standards Act, imposing criminal liability for a willful violation. *Id.* However, because of anticipated difficulties of proof under a criminal provision, as well as impediments to investigation, conciliation, and enforcement that might arise from an employer's invocation of the fifth amendment, the criminal penalty for willful violations was eliminated and replaced by a double, or liquidated, damages provision. *Id.* The legislative history reflected that the liquidated damages provision was intended to provide an effective deterrent to willful violations of the ADEA. *Id.*[6]

■ To the extent that the Supreme Court's discussion of penal laws in *Huntington v. Attrill*, 146 U.S. 657, 13 S.Ct. 224, 36 L.Ed. 1123 (1892), from which the *Murphy* factors were formulated, lends guidance to the issue of survival of an action, it supports the characterization of liquidated damages under the ADEA as penal. In *Huntington*, the Court considered the rule that the courts of one sovereign are without power to enforce the penal laws of another. The tenor of the Court's opinion is that while statutes providing for a right of recovery to an individual often have a penal element, *id.* at 667, 13 S.Ct. at 227, the word "penal" in its true sense denotes "a criminal or quasi-criminal law," *id.* at 676, 13 S.Ct. at 231. The Court

also quoted with approval another court's comparison of penal and remedial actions, stating that " '[a penal prosecution] is prosecuted for the purpose of punishment, and to deter others from offending in like manner.' " *Id.* at 668, 13 S.Ct. at 228 (quoting *Reed v. Northfield*, 13 Pick. 94, 100–01). Given the Supreme Court's clear characterization of the liquidated damages recovery under the ADEA as a more expedient substitute for a criminal sanction, intended to punish and deter willful violations, we conclude that an action solely for liquidated damages under the ADEA is penal such that it does not survive Smith's death.

We acknowledge that the application of *Smith v. No. 2 Galesburg Crown Fin. Corp.*, 615 F.2d 407 (7th Cir.1980), might support the survival of this action. In *Smith*, the court evaluated a cause of action under the Truth in Lending Act (TILA), stating that "[t]here is no question that TILA creates a cause of action for a civil penalty;" both Congress and the Supreme Court had described the action as such. *Id.* at 414. Nevertheless, the court reasoned that the characterization of the action as "penal" was not conclusive as to the survival of the TILA action, because "the term 'penal' is used in different contexts to mean different things." *Id.* In order to ascertain the nature of a cause of action for the specific purpose of determining survival, the court looked to the *Murphy* factors, even though the civil recovery was clearly described as "penal." The factors in *Murphy*, however, were articulated and employed for the purpose of determining, in the face of statutory silence,

---

**6.** It is this characterization of ADEA liquidated damages by the Supreme Court which lies at the heart of our disagreement with the concurrence filed herewith. The concurrence cites a recent Supreme Court decision, *United States v. Halper*, —— U.S. ——, 109 S.Ct. 1892, 104 L.Ed.2d 487 (1989), considering the nature of punishment for purposes of double jeopardy analysis, for the proposition that "in the ordinary case fixed-penalty-plus-double-damages provisions can be said to do no more than make the Government whole." *Id.* at ——, 109 S.Ct. at 1896. This is not the ordinary case, however, as the Supreme Court has specifically stated that with regard to ADEA liquidated damages, the intent of Congress was not to make a plaintiff whole upon a

showing of basic ADEA liability, but to punish and deter upon a showing of willfulness. *Thurston*, 469 U.S. at 125–26, 105 S.Ct. at 623–24. Because of this, the cases cited by the concurrence do not involve "similar kinds of damage provisions," and application of the test set forth in *Murphy v. Household Finance Corp.*, 560 F.2d 206 (6th Cir.1977), discussed *infra*, is unnecessary.

Nor is it especially significant that the Court in *Thurston* did not address the issue of survival. This is amply demonstrated by the cases cited in the concurrence, each of which looks to a non-survival context to ascertain the purpose served by the relevant statutes.

whether a statute was penal in nature within the meaning of *Huntington,* 146 U.S. at 666–67, 13 S.Ct. at 227–28, a case having nothing to do with the survival of an action. Thus, we are not persuaded by the conclusion in *Smith* that regarding the survival of an action, the *Murphy* factors possess any special relevance somehow more probative of legislative intent than the Supreme Court's explicit interpretation of the penal nature of a liquidated damages award under the ADEA.

In conclusion, we note that the rule of *Schreiber v. Sharpless,* 110 U.S. at 80, 3 S.Ct. at 424, is that actions on penal *statutes* do not survive a party's death; claims for reinstatement, backpay, and other benefits under the ADEA are clearly remedial in nature, and we could not say that the ADEA statute itself is a penal statute. *Schreiber* also cautions, however, that in evaluating survival, a court should look beyond "forms and modes of proceedings" and concentrate on the nature of the action brought. *Id.* As initially filed, prior to prevailing in state court, Smith's action did request reinstatement and actual damages as well as liquidated damages. Following the state court recovery and the lifting of the stay in federal court, however, Smith only "implie[d]" that he was entitled to actual damages in addition to those recovered in state court, rec. vol. I, doc. 25 at 9, the trial court entered summary judgment in favor of the DHS on this issue, and Smith does not appeal that ruling. Therefore, this action is essentially for liquidated damages, penal in nature, and to focus instead on the generally remedial nature of the ADEA statute, or the original posture of Smith's claim, rather than the essence of *this* action would, in our opinion, improperly elevate form over substance. We hold that Smith's suit, being in its essential nature a suit for liquidated damages under the ADEA, does not survive his death.

We modify the judgment in favor of the defendant and remand to the district court with an order to dismiss the suit. So modified, we AFFIRM.

EBEL, Circuit Judge, concurring in the judgment:

I concur in the judgment of the court. However, I am not persuaded that the Supreme Court's language in *Trans World Airlines, Inc., v. Thurston,* 469 U.S. 111, 125, 105 S.Ct. 613, 623, 83 L.Ed.2d 523 (1985), is controlling in this context, especially when that case did not concern the issue of survivability and the Court was not focusing on it.

The analysis set forth in *Murphy v. Household Finance Corp.,* 560 F.2d 206 (6th Cir.1977), if followed, would lead to the conclusion that the liquidated damage provision of the ADEA is remedial rather than penal. Further, dicta by the United States Supreme Court in the recent case of *United States v. Halper,* —— U.S. ——, at ——, 109 S.Ct. 1892, at 1896, —— L.Ed.2d —— (1989), suggests that this kind of provision should normally be considered remedial in nature. The Court in *Halper* stated that "in the ordinary case fixed-penalty-plus-double-damages provisions can be said to do no more than make the Government whole," and thus, would not be considered penal for purposes of triggering the Double Jeopardy Clause. Given the difficulty of this issue and the number of other cases holding generally that similar kinds of damage provision are not penal, I would prefer not to reach the survivability issue. *See, e.g., Kilgo v. Bowman Transp., Inc.,* 789 F.2d 859, 876 (11th Cir.1986); *In re Wood,* 643 F.2d 188, 190–92 (5th Cir.1980); *Smith v. No. 2 Galesburg Crown Fin. Corp.,* 615 F.2d 407, 414–15 (7th Cir.1980).

Nonetheless, I believe that the judgment of the district court should be affirmed because plaintiff did not present sufficient evidence showing that defendant's conduct was willful. The state court made no finding that defendant had willfully violated the ADEA, and the state court's determination consequently does not have any preclusive effect on that issue in this case. The only evidence of willfulness that plaintiff submitted at trial was a one-page stipulation in which defendant agreed that it was "aware of the Age Discrimination in Employment Act, 29 U.S.C. et seq., and the

838

provisions therein." (Plaintiff's Exh. 1.) Under *Thurston,* mere awareness of the ADEA by a defendant is not enough to cause a violation of the Act to be willful. 469 U.S. at 127–28, 105 S.Ct. at 625–26.