948 F.2d 1288
 Medicare & Medicaid Guide P 39,729
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Claudie COOK, et al., Plaintiffs-Appellants,
v.
Roland HAIRSTON, et al., Defendants-Appellees.
 No. 90-3437.
 United States Court of Appeals, Sixth Circuit.
 Nov. 26, 1991.
 
 Before KRUPANSKY and BOGGS, Circuit Judges, and DUGGAN, District Judge.*
 PER CURIAM.
 
 
 1
 Appellants, Iona Snider, Morrow Snider, Claudie Cook, and Erma Schaeffer, were nursing home residents who were denied Medicaid benefits because of actions by their "authorized representatives." Under Ohio law, persons who were mentally incapacitated or nursing home residents could have authorized representatives appointed for them for the purpose of preparing Medicaid applications. The person seeking benefits was then bound by the actions of his or her authorized representative. Appellees in this case are the various county Departments of Human Services, the administrators and directors of those Departments, the Ohio Department of Human Services, and Roland Hairston, its director.
 
 
 2
 Appellants' suit alleges that the regulations in question violated the Rehabilitation Act of 1973, codified at 29 U.S.C. § 794 (also known as § 504), 42 U.S.C. § 1396a(8) and (19), and the equal protection and due process clauses of the Fourteenth Amendment. Appellants moved for summary judgment, and appellees filed cross-motions for summary judgment. The district court granted summary judgment in favor of appellees on all claims. However, appellants have only argued on appeal the dismissal of their § 504 and 42 U.S.C. § 1396a claims.
 
 I.
 
 3
 Appellants in this case either were or are nursing home residents in the state of Ohio. On September 4, 1987, Iona Snider, now deceased, submitted an application for Medicaid on behalf of herself and her husband Morrow Snider, also now deceased. On November 11, 1987, the Sniders' nephew, at the request of the Warren County Department of Human Services ("WCDHS"), appointed himself as the Sniders' authorized representative[1] for purposes of the Medicaid application. WCDHS then sent all communications to the nephew. When the Sniders' nephew failed to respond, the WCDHS denied the Sniders' application; however, it sent the notice of denial only to the nephew. The Sniders sought administrative review of this denial, which was dismissed as untimely. After a second application for benefits, the Sniders were approved. Such benefits, however, were not made retroactive.[2]
 
 
 4
 Appellant Claudie Cook is also a nursing home resident. On January 6, 1988, her daughter submitted a Medicaid application to the Hamilton County Department of Human Services. The record indicates that Cook was mentally incompetent at that time. Since Cook was in a nursing home, her daughter, by filling out this application for her, was automatically deemed to be her authorized representative pursuant to P.A.M. 1014.1. Cook's daughter did not respond to requests for verifying documents, and the application was denied. This decision was upheld on administrative review.[3]
 
 
 5
 Appellant Erma Schaeffer is a nursing home resident, whom the record indicates suffered mental impairments. An authorized representative was also appointed for Ms. Schaeffer. This representative did not cooperate in establishing eligibility and her application was denied.
 
 
 6
 As previously referenced, appellants filed suit alleging that the Ohio regulation, P.A.M. 1014.1, violated 29 U.S.C. § 794, 42 U.S.C. § 1396a(8) and (19), and the equal protection and due process clauses of the Fourteenth Amendment. On appeal, however, appellants only argued that the district court erred in granting summary judgment as to the claims arising under 29 U.S.C. § 794 and 42 U.S.C. § 1396a(8) and (19). Therefore, the due process and equal protection claims will be deemed to be abandoned. Appellees seek to dismiss the Sniders' claims from this appeal on the grounds that they are now deceased, and their claims do not survive their deaths.
 
 II.
 
 7
 An appellate court reviews grants of summary judgment on a de novo basis. E.E.O.C. v. University of Detroit, 904 F.2d 331, 334 (6th Cir.1990). The Court must make all reasonable inferences in favor of the nonmoving party in determining if a genuine issue of material fact exists. Id.
 
 III.
 
 8
 The Ohio regulation in force at the time appellants applied for Medicaid stated:
 
 
 9
 An authorized representative is an individual, 18 years of age or older, who stands in place of the applicant/recipient. The authorized representative may act on behalf of individuals inside or outside the household in which he lives. In situations where the authorized representative provides incorrect or fraudulent eligibility information, the assistance group may still be held liable for any overpayments which may occur. The authorized representative will be held responsible for overpayments of assistance when the authorized representative is the legal guardian or legal trustee of the group.
 
 
 10
 The assistance group must provide a written statement naming the authorized representative and the duties which the named authorized representative may perform on the assistance group's behalf. When written authorization can not be obtained because of the individual's incompetency or incapacity, the CDHS may waive the written statement and assist in naming a responsible party to act as authorized representative for the assistance group. The assistance group is responsible for notifying the CDHS of any change in the named authorized representative.
 
 
 11
 In nursing home cases, the person supplying the information on behalf of the nursing home resident would be an authorized representative. That individual signs the application form on behalf of the applicant/recipient and receives notices on behalf of the applicant/recipient. (OAC 5101:1-2-05)
 
 P.A.M. 1014.1 (emphasis added).[4]
 A.
 
 12
 Appellants contend that P.A.M. 1014.1, prior to its change, violated 29 U.S.C. § 794, commonly referred to as § 504, barring discrimination against the handicapped in federally funded programs.
 
 
 13
 The parties do not dispute that Medicaid is a program covered by this statute. Appellants argue that they are or were all handicapped[5] within the meaning of the Act due to various physical or mental infirmities.
 
 
 14
 In order to establish discrimination under this statute a plaintiff must show that:
 
 
 15
 (1) The plaintiff is a "handicapped person" under the Act;
 
 
 16
 (2) The plaintiff is "otherwise qualified" for participation in the program;
 
 
 17
 (3) The plaintiff is being excluded from participation in, being denied the benefits of, or being subjected to discrimination under the program solely by reason of his handicap; and
 
 
 18
 (4) The relevant program or activity is receiving Federal financial assistance.
 
 
 19
 Doherty v. Southern College of Optometry, 862 F.2d 570, 573 (6th Cir.1988).
 
 
 20
 The district court, relying upon this standard in granting summary judgment, found that the appellants were handicapped individuals, and that they were qualified to participate in the program. The court also found that the program received Federal financial assistance. The district court, however, determined that the appellants had not been excluded from participation in the program solely by reason of their handicap; rather, they had been excluded because of omissions by their authorized representatives.
 
 
 21
 The challenged portion of the regulation does not discriminate against handicapped persons on its face; rather it distinguishes between applicants based on their status as nursing home residents. The United States Supreme Court, however, has recognized that it may be possible that some facially neutral or non-discriminatory statutes or regulations may implicate § 504 if they have a disparate impact on handicapped individuals. Alexander v. Choate, 469 U.S. 287, 299 (1985).[6] In Alexander, the Supreme Court was called upon to determine if a Tennessee proposal to reduce hospital stays covered under Medicaid was a violation of § 504. Id. at 289. The Court stated, "we assume without deciding that § 504 reaches at least some conduct that has an unjustifiable impact upon the handicapped. On that assumption, we must then determine whether the disparate effect of which respondents complain is the sort of disparate impact that federal law might recognize." Id. at 299. The Court then went on to analyze the proposal, and concluded that it did not disparately affect the handicapped in violation of § 504. Id. at 309.
 
 
 22
 The Court in Alexander considered several factors, i.e., whether the regulation would deny the handicapped meaningful access to the program; whether the regulation invokes criteria that have a particular exclusionary effect on the handicapped; and whether the regulation, although neutral on its face, distinguishes between those whose benefits will be reduced and those whose benefits will not be reduced on the basis of some trait which handicapped as a class are less likely to meet or have. Id. at 302.
 
 
 23
 In this case, the Ohio regulation denied the appellants meaningful access to the Medicaid program. Appellants were denied benefits due to a factor beyond their control, the noncooperation of their authorized representative. The regulation employs a criterion, nursing home residents, which has a particularly exclusionary effect on the handicapped, since a high number of nursing home residents may be expected to have either some mental or physical limitations which would render them handicapped under the meaning of the Act.
 
 
 24
 The trait of being a nursing home resident is one which handicapped are more likely to have than nonhandicapped, and coverage is affected by this trait. Additionally, the regulation in this case, unlike the one in Alexander, does not necessarily result in identical coverage for the handicapped and nonhandicapped. Handicapped nursing home residents may be denied Medicaid through no fault their own because of the neglect of their appointed representatives. Therefore, the regulation, although neutral on its face, had the effect of denying appellants benefits under the Medicaid program on the basis of their handicaps.
 
 
 25
 However, in order to establish a violation of § 504 a plaintiff must also be able to demonstrate that he or she would have been otherwise qualified to participate in the program. Doherty, 862 F.2d at 574. Under this analysis, the question is no longer whether the plaintiff would be "able to meet all of the program's requirements in spite of his handicap." Id. at 575 (quoting Southeastern Community College v. Davis, 442 U.S. 397, 406 (1979)). Rather, the proper inquiry "after Alexander is the rather mushy one of whether some 'reasonable accommodation' is available to satisfy the legitimate interests of both the grantee and the handicapped person." Id.
 
 
 26
 Appellees argue that they promulgated the regulation in question as a reasonable attempt to accommodate the needs of nursing home residents applying for Medicaid, all of whom suffer from some physical or mental limitation. This Court finds that this was a reasonable accommodation as to the mentally impaired nursing home residents, Cook and Schaeffer. Cook and Schaeffer have not demonstrated that they were otherwise qualified to have applied for Medicaid benefits without the appointment of an authorized representative, or that P.A.M. 1014.1 was an unreasonable accommodation of their mental impairments by the State of Ohio. Therefore, summary judgment was correctly granted as to them.
 
 
 27
 A different situation exists, however, with respect to the Sniders, who were able to submit applications for Medicaid independently through Iona Snider. This regulation, as applied by the WCDHS, did not represent a reasonable accommodation for physically handicapped nursing home residents, such as Iona Snider, who filled out the application for herself and Morrow Snider. The Sniders were able to submit an application by themselves. Nevertheless, a representative was appointed for them. It has not been shown that the appointment of a representative was necessary to enable the Sniders to complete the application process, or that it was a reasonable or necessary accommodation of their handicaps.
 
 
 28
 This Court concludes that the regulation, as implemented, had a disparate impact upon the Sniders as handicapped individuals, and did not represent a reasonable attempt by the State of Ohio to accommodate Iona Snider's physical handicap. Therefore, the district court erred in granting summary judgment in favor of defendants on this issue and erred in denying the Sniders' motion for summary judgment. The Sniders are entitled to compensatory damages for this violation of § 504.
 
 
 29
 Appellants also sought injunctive relief for the alleged violations of § 504. As previously referenced, the State of Ohio has deleted that portion of P.A.M. 1014.1 in question. Because the regulation has been changed to eliminate this violation of § 504 this Court finds that appellants' claim for injunctive relief on this issue is moot.
 
 
 30
 B. Claims for Violations of 42 U.S.C. § 1396(a).
 
 
 31
 Appellants' next allegation of error is that the district court incorrectly granted summary judgment on the claims brought under 42 U.S.C. § 1396a(8) and § 1396a(19). 42 U.S.C. § 1396a(8) requires that a state plan for medical assistance under Medicaid must:
 
 
 32
 (8) provide that all individuals wishing to make application for medical assistance under the plan shall have opportunity to do so, and that such assistance shall be furnished with reasonable promptness to all eligible individuals.
 
 
 33
 42 U.S.C. § 1396a(19) requires that the state plan must:
 
 
 34
 (19) provide such safeguards as may be necessary to assure that eligibility for care and services under the plan will be determined, and such care and services will be provided, in a manner consistent with simplicity of administration and the best interests of the recipients.
 
 
 35
 Appellants sought to enforce their claim under these provisions through 42 U.S.C. § 1983. The United States Supreme Court has recognized that § 1983 "provides a federal remedy for 'the deprivation of any rights, privileges, or immunities secured by the Constitution and laws.' " Golden State Transit Corp. v. City of Los Angeles, 110 S.Ct. 444, 448 (1989). "[W]hether a federal right has been violated [depends on] whether the provision in question creates obligations binding upon the governmental unit or rather 'does no more than express a congressional preference for certain kinds of treatment.' " Id. at 448. The crucial inquiry in determining if § 1983 may be used to enforce a claim for violation of a federal statute is whether "the statute ... creates obligations 'sufficiently specific and definite' to be within 'the competence of the judiciary to enforce.' " Id. at 449.
 
 
 36
 Where "statutory provisions were thought to be only statements of 'findings' indicating no more than a congressional preference--at most a 'nudge in the preferred directio[n]' ... and not intended to rise to the level of an enforceable right" they do not give rise to a cause of action under § 1983. Wright v. Roanoke Development and Housing Auth., 479 U.S. 418, 423 (1987) (quoting Pennhurst State School and Hospital v. Halderman, 451 U.S. 1, 19 (1981)).
 
 
 37
 The district court concluded that the provisions relied upon by appellants were not sufficiently specific to require that appellees guarantee that nursing home residents, who had authorized representatives appointed for them, receive the benefits for which they were eligible. The language in these provisions expresses general policy goals similar to the statute set out in Pennhurst. Such regulations do not set forth specific guidelines on how these goals are to be implemented. Therefore, the district court did not err in finding that the regulations in question were not sufficiently specific and definite to permit enforcement through § 1983.
 
 
 38
 C. Survivability of the Sniders' Claim.
 
 
 39
 As previously discussed, the Sniders died subsequent to the filing of this case, but before this appeal. Appellees seek their dismissal from this appeal, on the grounds that their claims did not survive their deaths.
 
 
 40
 As to the § 504 claim, a determination of the survivability of that action is governed by federal common law. Smith v. Department of Human Services, State of Oklahoma, 876 F.2d 832, 834 (10th Cir.1989) (citing James v. Home Construct. Co., 621 F.2d 727, 729 (5th Cir.1980)); 7C C. Wright, A. Miller & M. Kane, Federal Practice and Procedure § 1952 at 526 (1986)). "The typical rule under the federal common law is that an action for a penalty does not survive the death of the plaintiff." Smith at 834-35. This requires a determination of whether the statute under which the plaintiff is claiming is "penal or remedial in character." Id. at 835.
 
 
 41
 In order to establish whether a statute is penal or remedial in nature a court looks to:
 
 
 42
 (1) whether the purpose of the statute was to redress individual wrongs or more general wrongs to the public;
 
 
 43
 (2) whether recovery under the statute runs to the harmed individual or to the public; and
 
 
 44
 (3) whether the recovery authorized by the statute is wholly disproportionate to the harm suffered.
 
 
 45
 Murphy v. Household Finance Corp., 560 F.2d 206, 209 (6th Cir.1977).
 
 
 46
 The purpose of § 504 was to establish "a comprehensive federal program aimed at improving the lot of the handicapped." Consolidated Rail Corp. v. Darrone, 465 U.S. 624 (1984). The Act itself speaks to the individual when it states, "No otherwise handicapped individual...." Therefore § 504 is directed more to improving the lot of certain handicapped individuals who may suffer discrimination, rather than to redressing wrongs suffered by the general public. Recovery under § 504 runs to the individual, as provided under 29 U.S.C. § 794a(a)(2). Additionally, the Act does not authorize any damages in excess of the harm suffered. Based on these factors, § 504 meets the test set out in Murphy, for being a remedial rather than punitive statute. Therefore, any claim under § 504 survives the death of the plaintiffs.
 
 
 47
 The remaining issue raised by appellees is that the claims brought under 42 U.S.C. § 1983 are barred by the Eleventh Amendment. Since this Court has concluded that summary judgment was properly granted on these claims, this issue need not be addressed. Appellees have conceded that Congress abrogated the states' Eleventh Amendment immunity as to the § 504 claims.
 
 
 48
 For the foregoing reasons, we AFFIRM the district court's granting of summary judgment on the claims for violations of § 504 brought by appellants Cook and Schaeffer. We also find that any claims for injunctive relief brought under this statute are now moot. We also AFFIRM the district court's granting of summary judgment on all claims brought under 42 U.S.C. § 1983, alleging violations of 42 U.S.C. § 1396a(8) and (19). However, we find that the district court erred in granting summary judgment against Iona Snider and Morrow Snider on their claim that P.A.M. 1014.1, as applied to them, was in violation of § 504 of the Rehabilitation Act of 1973. We find that the Sniders' claims survive their deaths, and that they are entitled to compensatory damages for the violation of § 504. We therefore REVERSE the decision of the district court with respect to the claims brought on behalf of Iona and Morrow Snider and REMAND this matter to the district court for entry of a judgment consistent with this opinion.
 
 
 
 *
 The Honorable Patrick J. Duggan, United States District Judge for the Eastern District of Michigan, Sitting by Designation
 
 
 [1]
 Under the Ohio Public Assistance Manual ("P.A.M.") in cases for nursing home residents, an authorized representative is deemed to be any individual who supplies information on behalf of the resident. P.A.M. 1014.1. The authorized representative signs the application on behalf of the nursing home resident/applicant, and receives notices on behalf of the applicant. In cases where an applicant is not a nursing home resident, the applicant must name their authorized representative in writing and set forth the duties which that authorized representative may perform. P.A.M. 1014.1. If written authorization cannot be obtained due to "the individual's incompetency or incapacity" the written authorization may be waived and the county Department of Health Services may assist in finding an authorized representative
 
 
 [2]
 At the time of their deaths the Sniders owed approximately twenty-seven thousand dollars to the nursing home. Morrow Snider died in December 1989, subsequent to the filing of the instant action. The record reflects that a Suggestion of Death of Iona Snider was filed on February 9, 1990
 
 
 [3]
 Cook owes approximately nine thousand dollars to her nursing home for the time when she was not covered by Medicaid. Cook was eventually able to obtain benefits, but they were not made retroactive
 
 
 [4]
 This regulation was changed, effective January, 1990. This change applied to the last paragraph of the regulation, and now reads:
 When an assistance group has an authorized representative named to act on its behalf, all notices and correspondence issued by the CDHS on the behalf of the assistance group must be issued to both the authorized representative and the assistance group.
 Additionally, the language providing that the person supplying information on behalf of a nursing home resident was automatically deemed to be the authorized representative of that applicant was deleted from the regulation.
 
 
 [5]
 All of the applications by appellants were for intermediate nursing care, which by definition meant that they had physical or mental impairments which substantially limited one or more of their major life activities
 
 
 [6]
 Some circuit courts have also recognized that there may be claims of discrimination brought under § 504 based on a disparate impact theory. See Georgia State Conference of Branches of NAACP v. Georgia, 775 F.2d 1403 (11th Cir.1985); Prewitt v. United States Postal Service, 662 F.2d 292 (5th Cir.1981)