**UNITED STATES of America, Plaintiff,**

v.

**$47,409.00 IN UNITED STATES CURRENCY, Defendant.**

**No. 1:92 CV 742.**

United States District Court,
N.D. Ohio, E.D.

Jan. 15, 1993.

Kathleen L. Midian, Office Of The U.S. Atty., Cleveland, OH, for plaintiff.

Joseph A. Dubyak, Cleveland, OH, for defendant and claimant.

### ORDER

SAM H. BELL, District Judge.

On the 14th of April, 1992, the plaintiff United States of America filed its complaint alleging that the defendant $47,409.00 in U.S. currency is subject to forfeiture to the United States pursuant to 18 U.S.C. § 1955(d) in that it is money used in an illegal gambling business in violation of that same section of Title 18, United States Code. In June of this year, an answer and verified claim were filed on behalf of William Siko, Jr. Currently before the court are two motions for summary judgment. (Docket ## 18 and 20) The first, filed on behalf of the claimant William Siko Jr., is premised upon two grounds: 1) that the claimant is entitled to judgment as a matter of law because any forfeiture action the Government may have had was abated by William Siko Sr.'s death, and 2) the government has not shown probable cause to connect the defendant currency to illegal gambling activity. (Docket # 18) The second,

filed on behalf of the United States, requests summary judgment in the Government's favor on the issue of probable cause. (Docket # 20). Because the issue of probable cause is rendered moot by a determination that the cause of action has abated by the death of the Senior Siko, the court has chosen to address the matter of abatement first.

### Standard of Review

In reviewing a motion for summary judgment, a court must consider the pleadings, related documents, evidence, and all reasonable inferences in a manner most favorable to the non-moving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970); *Smith v. Hudson*, 600 F.2d 60 (6th Cir.1979). Rule 56 provides, in relevant part, as follows:

(c) ...

The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

.    .    .    .    .

(e) ...

When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial.

Three Supreme Court cases have provided guidance as to the nature of the respective burdens allocated under Rule 56. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). The ultimate burden lies with the non-moving party to show the existence of a genuine issue of material fact. "When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts ... In the language of the Rule, the non-moving party must come forward with 'specific facts showing that there is a *genuine issue for trial.*' Fed.Rule Civ.Proc. 56(e)." *Matsushita*, 475 U.S. at 586–87, 106 S.Ct. at 1356 (emphasis supplied). "In our view, the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322, 106 S.Ct. at 2552. The court in *Anderson* held that "the plaintiff must present affirmative evidence in order to defeat a properly supported motion for summary judgment. This is true even where the evidence is likely to be within the possession of the defendant, as long as the plaintiff had had a full opportunity to conduct discovery." *Anderson*, 477 U.S. at 257, 106 S.Ct. at 2514.

On the other hand, the moving party's burden under Rule 56 is lighter.

Of course, a party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the "'pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact. But unlike the Court of Appeals, we find no express or implied requirement in Rule 56 that the moving party support its motion with affidavits or other similar materials *negating* the opponent's claim. On the contrary, Rule 56(c) ... suggests the absence of such a requirement.

*Celotex, supra,* 477 U.S. at 323, 106 S.Ct. at 2553 (emphasis supplied).

The Sixth Circuit Court of Appeals, in *Street v. J.C. Bradford and Co.*, 886 F.2d 1472 (6th Cir.1989) recently reviewed court

decisions and commentary regarding the impact of *Anderson, Celotex,* and *Matsushita* on summary judgment practice. The court concluded that a "new era" in summary judgment practice has opened in the court system as a result of these opinions.

Scholars and courts are in agreement that a "new era" in summary judgments dawned by virtue of the Court's opinions in these cases ... On the whole, these decisions reflect a salutary return to the original purpose of summary judgments. Over the years, decisions requiring denial of summary judgment if there was even a suggestion of an issue of fact and tended to emasculate summary judgment as an effective procedural device.

*Street, supra,* at 1476.

The court enunciated the following "new era" principles, among others: as on federal directed verdict motions, the "scintilla" rule applies, *i.e.,* the respondent must adduce more than a scintilla of evidence to overcome the motion; the respondent cannot rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact, but must "present affirmative evidence in order to defeat a properly supported motion for summary judgment"; the trial court no longer has the duty to search the entire record to establish that it is bereft of a genuine issue of material fact. *Id.* at 1479–80 (footnotes and citations omitted).

### Law and Analysis

■ The facts relevant to determine abatement of this action are undisputed. William Siko, Sr., the person who allegedly used the defendant currency as his illegal gambling "bank", shot his wife, one of his two sons and himself in July of 1991 at these persons' residence. The police investigating the crime scene found the defendant currency, seized it and a federal seizure warrant for the currency was issued by U.S. Magistrate Judge Streepy in September of 1991. The claimant in the instant matter is the surviving son of William Siko Sr., William Siko Jr.. Inasmuch as these fundamental facts are indisputable and that the challenged forfeiture is one provided for by federal law, the abatement of this cause is a pure question of federal common law. *Baltimore & Ohio Ry. Co. v. Joy,* 173 U.S. 226, 230, 19 S.Ct. 387, 389, 43 L.Ed. 677 (1899); *Martin's Administrator v. Baltimore & Ohio Ry. Co.,* 151 U.S. 673, 14 S.Ct. 533, 38 L.Ed. 311 (1894); *County of Oakland by Kuhn v. City of Detroit,* 784 F.Supp. 1275, 1284–85 (E.D.Mich.1992).

As noted above, the claimant asserts on summary judgment that the forfeiture action afforded by Section 1955(d), Title 18, United States Code abated upon the death of the alleged wrongdoer, William Siko, Sr. This issue of one of first impression not only within this judicial district, but also, as the parties' and this court's research indicates, nationwide. Section 1955 provides, in pertinent part, as follows:

(a) Whoever conducts, finances, manages, supervises, directs, or owns all or part of an illegal gambling business shall be fined not more than $20,000 or imprisoned not more than five years, or both.

.    .    .    .    .

(d) Any property, *including money,* used in violation of the provisions of this section may be seized and forfeited to the United States....

28 U.S.C. § 1955 (emphasis added). The question here is whether this forfeiture provision abates upon the death of the alleged wrongdoer.

■ Whether a cause of action survives the death of the alleged wrongdoer hinges upon a determination that the cause is remedial or punitive in nature. The former causes survive, the latter do not. *See, e.g., County of Oakland by Kuhn v. City of Detroit,* 784 F.Supp. 1275, 1285 (E.D.Mich.1992). This principal was most forthrightly pronounced in the modern era in the Supreme Court case of *Schreiber v. Sharpless,* 110 U.S. 76, 3 S.Ct. 423, 28 L.Ed. 65 (1884). In that case, the Schreibers sued Mr. Sharpless "to recover certain penalties and forfeitures .. for the infringement of a copyright." Mr. Sharpless died after the filing of the complaint and the executrix opposed a motion to have her substituted as the named defendant. The district court denied the motion on the

grounds of abatement. The Supreme Court agreed with that judgment, ruling:

The suit was not for the damages the plaintiffs had sustained by the infringement, *but for the penalties and forfeitures recoverable under the Act of Congress for a violation of the copyright law.* The personal representative of a deceased party to a suit cannot prosecute or defend the suit after his death, unless the cause of action, on account of which the suit was brought, is one that survives by law. At common law, actions on penal statutes do not survive and there is no Act of Congress which establishes any other rule in respect to actions on the penal statutes of the United States. The right to proceed against the representatives of a deceased person depends not on forms and modes of proceeding in a suit, but on the nature of the cause of action for which the suit is brought ... [I]f the cause of action dies with the person, the suit abates and cannot be revived. *Whether an action survives, depends on the substance of the cause of action, not on the forms of proceeding to enforce it.* As the nature of penalties and forfeitures imposed by Acts of Congress cannot be changed by state laws, it follows that state statutes allowing suits on state penal statutes to be prosecuted after the death of the offender, can have no effect in the courts of the United States for the recovery of penalties imposed by an Act of Congress.

110 U.S. at 79–80, 3 S.Ct. at 424. As this quotation makes clear, a statute imposing a liability which is a penalty in substance, rather than in form, abates upon the death of the alleged offender. This precept has found expression in our own Circuit as well.

■ In *Bowles v. Farmers National Bank of Lebanon,* 147 F.2d 425 (6th Cir. 1945), the offending decedent was accused of selling whiskey priced in excess of the wartime controls. The administrator of the Office of Price Administration brought a suit for damages in an amount treble the amount of "excess" profit, naming the executor bank as defendant. The district court dismissed on the basis of abatement.

The Circuit affirmed, stating, in pertinent part, the following:

The basic test whether a law is penal in the strict and primary sense is whether the wrong sought to be redressed is a wrong to the public or a wrong to the individual.

147 F.2d at 428. The court noted that the Act afforded the Administrator a number of enforcement options:

He may either apply for an injunction, cause criminal proceedings to be instituted, issue licenses in order to regulate dealing in commodities, or file a suit for recovery of treble damages. *The suit for recovery is plainly intended by Congress 'to be used as a method of "enforcement" equally with the other methods prescribed.*

147 F.2d at 428 Tellingly, the court engaged in the following analysis:

The fact that the sum is to be recovered in a civil action does not determine the nature of the exaction.

. . . . .

The Administrator argues that the Government has suffered a loss by reason of these sales in excess of the price ceilings on whiskey, and that recovery in his favor is recovery for the party injured; but no items of loss are alleged in the complaint, which is squarely based on violation of the regulation, rather than upon damage to the Government. It is plain here that the loss was borne by the purchasers of the whiskey, and that the return to them of the amount paid in excess of the maximum price under the OPA regulations, that is one-third of the damages claimed in the complaint, would have made them whole. The fact that, as contended, the treble damages may compensate the Government for general expenses of administration and investigation does not bear upon the question whether the recovery is or is not penal in nature.

. . . . .

[I]f Congress had provided that this should or should not be considered a penalty, the court would be bound there-

by; but in absence of such declaration by Congress, *the intrinsic nature of the exaction is decisive....*

[T]he extrinsic nature of the provision controls; and this, as read in light of the purposes of the statute and of the "Enforcement" section itself, is penalty rather than compensation.

147 F.2d at 428–429.

To this court's knowledge, our Circuit last addressed the abatement/survival issue in the 1977 case of *Murphy v. Household Finance Corp.*, 560 F.2d 206 (6th Cir.1977). *Murphy* involved a husband and wife who were extended credit in violation of the Truth in Lending Act. After they filed a voluntary petition in bankruptcy, their bankruptcy trustee, Mr. Murphy, filed a civil action in district court against the lender seeking recovery in the sum of twice the finance charge, as permitted by the Act. The lender argued that the claim did not pass to the trustee, the sole issue on summary judgment, which the district court granted in favor of the trustee. On appeal, the Circuit affirmed. The Circuit noted:

> The parties to this appeal are in agreement, based on *Schreiber v. Sharpless*, 110 U.S. 76, 3 S.Ct. 423, 28 L.Ed. 65 (1884); *Bowles v. Farmers Nat'l Bank of Lebanon Ky.*, 147 F.2d 425 (6th Cir. 1945), and *In re Schmelzer*, 350 F.Supp. 429 (S.D.Ohio 1972), *aff'd*, 480 F.2d 1074 (6th Cir.1973), that a cause of action is transferrable for Bankruptcy Act purposes if the action would "survive" the death of the holder, *but that actions for penalties or forfeitures do not survive and thus are not transferrable. The question of survivability and the question whether the cause of action seeks to recover a penalty are matters of federal law.*

560 F.2d at 208 (emphasis added). Analyzing an extensive quote from a relevant Supreme Court opinion[1], the late Chief Judge Phillips commented that the Supreme Court cases "give us some guidelines for assessing the extent to which the statutory provisions ... are penal in nature." *Id.* at 209 Judge Phillips stated:

> Three factors in particular deserve attention: 1) whether the purpose of the statute was to redress individual wrongs or more general wrongs to the public; 2) whether recovery under the statute runs to the harmed individual or to the public; and 3) whether the recovery authorized by the statute is wholly disproportionate to the harm suffered.

*Id.* at 209. Noting that the legislative history indicated that the Act was focused on the individual borrower and was intended to be remedial and that "the recovery provided ... runs in favor of the individual", the court held that the Truth in Lending Act's provision for twice the finance charge damages survived:

> statutory schemes authorizing ... recoveries greater than actual damages ... [do not] impose penalties where the wrong addressed by the statute is primarily a wrong to the individual.

560 F.2d at 210. The *Murphy* test, firmly grounded in Supreme Court precedent, is part and parcel of this Circuit's precedent to this very day. *See, e.g., United States v. Edwards*, 667 F.Supp. 1204 (W.D.Tenn. 1987) (Todd, J.,) (Clean Water Act's "civil penalty not to exceed $10,000 per day", 33 U.S.C. 1445(s)(5), was penalty and did not survive alleged wrongdoer's death) With this precedent established, we must turn to the case at bar.

We must, of course, direct our inquiry to the statute itself. This criminal statute provides for the civil forfeiture of any money used in an illegal gambling business. As such, a characterization of this provision as a "penalty" appears entirely self-evident. Indeed, the forfeiture provision about which we are concerned is an integral part of a criminal statute, a fact which is not without significance in our analysis. *See Bowles*, 147 F.2d at 429; *United States v. U.S. Currency*, 626 F.2d 11, 18 (6th Cir.1980) (Merritt, J., concurring), *cert. denied*, 449 U.S. 993, 101 S.Ct. 529, 66 L.Ed.2d 290 (1980).

---

1. *Huntington v. Attrill*, 146 U.S. 657, 13 S.Ct. 224, 36 L.Ed. 1123 (1892).

Section 1955 was enacted as part of the Organized Crime Control Act of 1970, an act intended to blunt the threat of organized crime to society at large. Pub.L. 91–452, Title VIII, § 803(a), Oct. 15, 1970, 84 Stat. 937. Indeed, the legislative history of the Act, embodied in House Report No. 91–1549, adopts as part of that history the Attorney General's view that Title VIII (the gambling provisions relevant here) "relates in its entirety to the control of illegal syndicated gambling" and is "directed solely to the objective of providing for more effective Federal prosecution of illegal gambling—the lifeblood of organized crime." Committee on the Judiciary, Organized Crime Control Act of 1970, H.R.Rep. 1549, 91st Cong., (1970), *reprinted in* 1970 U.S.C.C.A.N. 4007, 4050, 4064. The criminal portion of Section 1955 is clearly intended to apprehend and punish persons engaging in relatively large-scale gambling enterprises, or, in other words, persons engaging in organized crime. *See* 18 U.S.C. § 1955(b)(1)(i)–(iii). The forfeiture provisions of this Section comprise but one component in that task; they are clearly intended to redress the public harm caused by organized crime rather than to redress the individual wrongs inflicted upon organized crime's "willing" gambling victims. The harm here is not, as in the *Murphy* lending case, harm to an individual. Gambling is not, in and of itself, prohibited by the statute. The statute attacks large-scale "illegal gambling businesses". The harm to individual gamblers, may be just as great from wagering businesses which do not rise to the level of being an "illegal gambling businesses", as from lottery games and the like which are exempted from the Act. *See* 18 U.S.C. § 1955(e) The remedy here clearly redresses the general wrongs to the public which arise from gambling as an enterprise of organized crime. As one court has noted, these wrongs include "draining resources from the economy, subverting the democratic process, and undermining the general welfare." *Summers v. FDIC*, 592 F.Supp. 1240, 1242 (W.D.Okla 1984).

It also seems quite apparent that recovery under the statute runs solely to the public rather than to the harmed individual. The action here is commenced by the Government for recovery of monies to the Government. That the Government alone may bring suit is not without significance under the common law. *See Hales v. Winn–Dixie Stores, Inc.*, 500 F.2d 836, 840 (4th Cir. 1974) ("the importance of who sues and who collects and retains any judgment is stressed."); *Rivera v. Anaya*, 726 F.2d 564, 568 n. 3 (9th Cir.1984); *Brady v. Daly*, 175 U.S. 148, 154, 20 S.Ct. 62, 64, 44 L.Ed. 109, 112 (1899) ("The whole recovery is given to the proprietor, and the statute does not provide for a recovery by any other person in case the proprietor himself neglects to sue. It has nothing in the nature of a *qui tam* action about it, and we think it provides for the recovery of neither a penalty nor a forfeiture.") There is no indication that the Government here seeks, intends or engages in the absurd function of returning the gambling profits to the luckless wagerers involved.

The final *Murphy* factor, inquiring whether the recovery authorized by the statute is wholly disproportionate to the harm suffered, is difficult if not impossible to apply in this context. Here, we have no indication of any harm actually caused by the wrongful conduct, other than the generalized public harm caused by violation of the law. Here, no concrete harm may be figuratively calculated; and indeed, the parties have made no attempt to do so. Prior to the *Murphy* opinion, the Sixth Circuit ruled that:

> If [the action] is brought to compensate for an injury to the United States, it is one for damages and does not abate upon the death of the defendant. If, on the other hand, no direct injury has been done to the United States, the action is not for compensation but for recovery of a penalty, and abates upon the death of the defendant.

*United States v. Price*, 290 F.2d 525, 526 (6th Cir.1961). It seems quite clear that the forfeiture here is unrelated to any calculable damage to the government, and, as such, the case law suggests that the third factor, also, weighs in favor of abatement.

The court is thus faced with two factors which clearly favor a finding that the forfeiture here is penal rather than remedial and a third factor which suggests that the forfeiture here is in fact a penalty. In light of the above findings, the court must conclude that Section 1955(d) is, in fact, penal in nature and abates at the death of the alleged wrongdoer. In so doing, the court must note that it finds persuasive the fact that the courts of common law, until very recent times, have considered forfeitures punitive at the outset.

The punitive nature of forfeitures has been commented on by both the Supreme Court and the Sixth Circuit. For instance, in *Schreiber v. Sharpless*, discussed above, the forfeitures at issue, clearly civil in nature, were *assumed* punitive for the purposes of abatement. *See* 110 U.S. at 76–80, 3 S.Ct. at 423–24. In fact, even those court's which have shown disdain for the *Murphy* court's reliance upon *Huntington v. Attrill* admit that that case "equated the concepts of the words "penal" and "penalty" with the common law concept that those terms were limited to forfeitures, either corporeal or monetary, to the state for offenses committed against the state as such." *Johnson v. Household Finance Corp.*, 453 F.Supp. 1327 (1978). Simply put, the court believes civil forfeitures which are part of a criminal statute such as these are, constitute penalties under the common law. Prior to RICO and related contemporary statutes, criminal forfeiture "had actually been *prohibited* in the United States". *United States v. Schmalfeldt*, 657 F.Supp. 385, 387 (W.D.Mich.1987) (*citing* Act of April 30, 1790, Section 24, 1 Stat. 112, 117; *United States v. Rubin*, 559 F.2d 975, 991 n. 15 (5th Cir.1977), *cert. denied*, 444 U.S. 864, 100 S.Ct. 133, 62 L.Ed.2d 87 (1979)). The case law is replete with examples of court rulings that civil forfeitures attendant to criminal acts are penalties in nature. In *United States v. Wittemann*, 152 F. 377 (2d Cir.1907), an importer of spirits was accused of undervaluing goods in an attempt to evade customs duties. The government brought an action "specifically for the recovery of a forfeiture" of the items undervalued. The

Court, in determining which statute of limitations would apply to the action held:

It is clear that this is a prosecution for a penalty or forfeiture under a federal penal statute having for its primary object the infliction of punishment upon the offender.... [A] fortiori the provision of section 9 for a forfeiture in case of a fraudulent undervaluation is penal.

152 F. at 379, 380. In a similar vein is the case of *United States v. Theurer*, 213 F. 964 (5th Cir.1914), *cert. denied*, 235 U.S. 706, 35 S.Ct. 283, 59 L.Ed. 434 (1915). That case:

presented another branch of a never ending litigation originally entitled *United States v. Fifty Barrels of Whisky* (sic). In the original case, a libel was filed against 50 barrels of whisky (sic), presumably under the internal revenue law of July 13, 1866. Shortly after the seizure, one Gaspard Theurer appeared and claimed the goods, and they were released to him on bond. After that case went to trial and resulted in a judgment against him in the District Court, from which he took an appeal to the Circuit Court. And then he died. After his death various other proceedings were had, which eventually established the validity of the judgment of the District Court. The present action is brought against the heirs ... seeking to hold them for a judgment of $6,000, with interest at five per cent.

213 F. at 965. The defendants "principally urged ... that the forfeiture of the whisky (sic) in the original suit was the enforcement of a penalty, and that the action abated with the death of the original Gaspard Theuer." *Id.* The district court agreed and dismissed the suit on the basis of abatement:

The law under which the seizure was made is highly penal. Any one violating its many provisions could be both fined and imprisoned, and even the goods of innocent third persons might be forfeited to the United States. *Henderson's Distilled Spirits*, 14 Wall. 44. I *can see no difference between the forfeiture in this case, with the subsequent judgment on*

*the bond, and a fine imposed after trial on indictment. The form of the action is immaterial.*

213 F. at 965–66 (emphasis added). The Fifth Circuit Court of Appeals affirmed, commenting that the "case was correctly decided in the District Court because, after all, this was the enforcement of a penalty against the heirs of Gaspard Theurer." *Id.* at 967. After lengthy quotation of cases with similar reasoning, the Circuit concluded:

> We put our decision in this case, affirming the judgment of the District Court, upon the ground solely that the suit is for the enforcement of a penalty strictly against the estate of a dead man.

213 F. at 968. The import of such a case is quite apparent. In rem forfeiture proceedings, civil in nature, were considered at the common law to be penalties which abated upon the death of the alleged wrongdoer. To come to any other conclusion would, in this court's mind, ignore both common sense and the common law.

In response to similar arguments from the instant claimant's counsel, the United States has done no more than direct this court's attention to opinions of courts of other Circuits which have held that forfeitures had under the nation's illicit drug laws do not abate upon the wrongdoer's death. First among these is the case *United States v. Miscellaneous Jewelry,* 667 F.Supp. 232 (D.Md.1987), *aff'd,* 889 F.2d 1317 (4th Cir.1989) (en banc). Inasmuch as the Fourth Circuit noted that it could "add little to the district court's sound analysis of the abatement issue", we shall direct our review to the district court's opinion. 889 F.2d at 1319.

At the outset, we note that the district court in Maryland, specifically ruled that the Sixth Circuit's *Murphy* factors (and by implication, the Supreme Court's *Huntington v. Attrill* discussion) were "inapposite". 667 F.Supp. at 232 n. 15. As the United States here notes, the district court in *Miscellaneous Jewelry:*

> determined that section 881[2] was not primarily penal in nature for two main

reasons. First of all, the statute is a civil statute rather than a criminal statute. Innocence of the wrongdoer, therefore, is not in issue. Second, Congress established the statute as an *in rem* proceeding. There is, therefore, no requirement that any individual be held accountable for violating the law.

(Response In Opposition to Motion for Summary Judgment and Motion for Partial Summary Judgment on the Issue of Probable Cause, Docket # 20 at 11–12) This court believes that, under Supreme Court and Sixth Circuit precedent, reliance upon these factors is misplaced. It has been consistently held that the form or method of proceeding is of no consequence in a determination whether an action is punitive or penal, and thus abates upon the death of the alleged wrongdoer. Commenting upon a related issue, the late Justice Fields stated:

> Admitting that the penalty may be recovered in a civil action, as well as by a criminal prosecution—it is still as a punishment for the infraction of the law. The term "penalty" involves the idea of punishment, and its character is not changed by the mode in which it is inflicted, whether by civil action or a criminal prosecution.... To hold otherwise would be to sacrifice a great principle to the mere form of procedure....

*United States v. Chouteau,* 102 U.S. 603, 611, 26 L.Ed. 246, 249 (1881). On this specific point, Justice Waite held that:

> The right to proceed against the representatives of a deceased person depends not on forms and modes of proceeding in suit, but on the nature of the cause of action for which the suit is brought.... Whether the action survives, depends on the substance of the cause of action, not on the forms of proceeding to enforce it.

*Schreiber v. Sharpless,* 110 U.S. at 80, 3 S.Ct. at 424, 28 L.Ed. at 66. This same principle has found expression within our own Circuit:

> The fact that the sum is to be recovered in a civil action does not determine the

2. 21 U.S.C. § 881.

nature of the exaction.... [T]he extrinsic nature of the provision controls.... *Bowles*, 147 F.2d at 428–29. This Court must surmise that form of the proceeding is, at best, marginally relevant. With this established, we must turn to the final factor, perhaps unstated, which underlies both the Government's reasoning here and the cases cited by it.

It is well known that the common law abhors a forfeiture. It is equally apparent that forfeitures, even if brought in civil form, are quasi-criminal actions in fact. Judge Merritt, commenting upon the very statutory section at issue here stated:

> Justice Harlan wrote for the majority in *U.S. Coin & Currency* that gambling forfeiture proceedings are criminal in nature:
>
> > ... [A]s *Boyd v. United States*, 116 U.S. 616, 634, 6 S.Ct. 524, 534, 29 L.Ed. 746 (1886), makes clear, "proceedings instituted for the purpose of declaring the forfeiture of a man's property *by reason of the offenses committed by him*, though they may be civil in form, are in their nature criminal" for Fifth Amendment purposes. (emphasis supplied) From the relevant constitutional standpoint there is no difference between a man who "forfeits" $8,674 because he has used the money in illegal gambling activities and a man who pays a "criminal fine" of $8,674 as a result of the same course of conduct. In both instances, money liability is predicated upon a finding of the owner's wrongful conduct; in both cases, the Fifth Amendment applies with equal force. See also *One 1958 Plymouth Sedan v. Pennsylvania*, 380 U.S. 693, 700, 85 S.Ct. 1246, 1250, 14 L.Ed.2d 170 (1965).
> >
> > ... When the forfeiture statutes are viewed in their entirety, it is manifest that they are intended to impose a penalty only upon those who are significantly involved in the criminal enterprise. [*United States v. U.S. Coin & Currency*] 401 U.S. [715] at 718–22, 91 S.Ct. [1041] at 1043, 1045 [28 L.Ed.2d 434 (1971)] (footnote omitted).

Just as in the case quoted above, the forfeiture of cash here is a penalty predicated upon a finding of the owner's wrongful conduct. The statutory authority for forfeiture proceedings, 18 U.S.C. § 1955(d), appears within the criminal code. We must therefore instruct the District Court that it must afford claimant the same safeguards he would be afforded in any other criminal trial. *United States v. U.S. Currency*, 626 F.2d 11, 18 (6th Cir.1980) (Merritt, J., concurring), *cert. denied*, 449 U.S. 993, 101 S.Ct. 529, 66 L.Ed.2d 290 (1980) *See also, United States v. Premises Located at Highway 13/5*, 747 F.Supp. 641, 645 (N.D.Ala.1990), *rev'd on other grounds*, 946 F.2d 749 (11th Cir.1991) ("criminal conduct by a property owner is the *sine qua non* for an proposed forfeiture of his property ... this particular forfeiture statute has a quasi-criminal character....") The court believes that such conclusions clearly support the proposition that the statute at issue is punitive rather than remedial in nature for the purposes of *common law* abatement.

Nevertheless, a great deal of case law in contemporary times has been devoted to a determination whether an action is civil or criminal in nature, with the latter actions afforded the protections the Constitution provides the criminally accused. *See, e.g., United States v. Ward*, 448 U.S. 242, 100 S.Ct. 2636, 65 L.Ed.2d 742 (1980). These cases, in effect, form the foundation of the opinions which have ruled that the drug forfeiture provisions of the U.S.Code are remedial rather than punitive. *See, e.g., United States v. $84,740.00 Currency*, 981 F.2d 1110 (9th Cir.1992). This court is not convinced that such reliance is appropriate. Upon questions of abatement and survival of actions, courts are asked to determine whether, under the common law, the action is remedial or punitive in nature. The common law, admittedly hostile to forfeitures, looks to the *effect* of the putatively abated action, to wit: does it ameliorate individual harm for individual benefit or social harm for public benefit. Under that view, the punitive nature of forfeitures is self-evident, regardless of the manner in which they are prosecuted. The cases relied upon

by the Government and the drug forfeiture courts ask a similar question, but necessarily apply a different test for an altogether different purpose. Here, we are simply asked whether an action abates under the common law. Those cases, however, ask whether a civil *penalty* (which clearly can be considered punitive for abatement purposes) are so punitive as to transform a civil case into a *criminal case* for *constitutional* purposes. *See, e.g., United States v. Ward*, 448 U.S. at 242, 100 S.Ct. at 2638. In other words, their inquiry begins where ours ends. This court has found no indication that the common law regarding abatements has undergone any serious revision since the deliberations of the *Schreiber*, *Bowles* and *Murphy* courts, and believes that reliance upon cases such as *U.S. v. Ward* and the like demands inquiry inappropriate for our purposes.

Section 1955's forfeiture provision, brought by the Government to seize money used in violation of the law, redresses public harm for public benefit and is wholly unrelated to any damage suffered by the Sovereign. The punitive nature of this section, part of a criminal statute, is manifest. As such, the common law dictates that this action abated upon the death of William Siko, Sr.. As noted in *American Jurisprudence:*

> As to what is a penal action, the rule is that where an action is founded entirely on statute, and the only object is to recover a penalty or forfeiture, it is clearly a penal action within the rule of nonsurvivability.

1 Am.Jur.2d *Abatement, Survival, and Revival* § 79 (1962).

Accordingly, the claimant's motion for summary judgment, Docket # 18, is GRANTED.

IT IS SO ORDERED.