Denis J. MURPHY, Trustee,
Plaintiff-Appellee,

v.

HOUSEHOLD FINANCE
CORPORATION,
Defendant-Appellant.

No. 76–2106.

United States Court of Appeals,
Sixth Circuit.

Argued April 21, 1977.

Decided and Filed August 8, 1977.

Robert W. Werth, Vorys, Sater, Seymour & Pease, John C. Elam, James M. Ball, Columbus, Ohio, for defendant-appellant.

Denis J. Murphy, Craig M. Stewart, Carlile, Patchen, Murphy & Allison, Columbus, Ohio, for plaintiff-appellee.

Before PHILLIPS, Chief Judge, WEICK and EDWARDS, Circuit Judges.

PHILLIPS, Chief Judge.

This case presents the question whether a bankrupt's cause of action against a lending company for recovery under § 130(a)(2)(A)

of the Truth in Lending Act[1] passes to the trustee in bankruptcy pursuant to § 70a of the Bankruptcy Act.[2] We hold that it does.

## I.

The facts were stipulated. On June 26, 1973, Mr. and Mrs. Randy Westbrook procured a consumer loan in the principal amount of $894.91 from Household Finance Corporation (HFC). At the time of closing the loan, HFC provided the Westbrooks the disclosure forms required by the Truth in Lending Act and Regulation Z promulgated thereunder, 12 C.F.R. § 226 *et seq.* The disclosures provided by HFC were illegible and HFC has stipulated that, for purposes of the present action, the disclosures to the Westbrooks did not comply with the applicable provisions of the Truth in Lending Act and Regulation Z.

On April 19, 1974, the Westbrooks filed a voluntary petition in bankruptcy. Denis J. Murphy, trustee in bankruptcy for the estate of the Westbrooks, filed a civil action in the district court alleging that HFC had violated the Truth in Lending Act and Regulation Z by failing to supply the Westbrooks with proper credit disclosures. The complaint sought recovery in the sum of twice the finance charge, with a minimum of $10 and a maximum of $1,000, as provided in § 130(a)(2)(A) of the Truth in Lending Act.[3] In its answer to the complaint HFC raised the affirmative defense that the trustee in bankruptcy did not have standing to sue, contending that the cause of action for statutory recovery under the Truth in Lending Act did not pass to the trustee under § 70a of the Bankruptcy Act.

1. Section 130(a) of the Truth in Lending Act, 15 U.S.C. § 1640(a), reads as follows:

 § **1640. Civil liability**

 (a) **Amount of liability.** Except as otherwise provided in this section, any creditor who fails to comply with any requirement imposed under this chapter [15 USCS §§ 1631 et seq.] or chapter D or E of this title [15 USCS §§ 1666 et seq., 1667 et seq.] with respect to any person is liable to such person in an amount equal to the sum of—
 (1) any actual damages sustained by such person as a result of the failure; (2)(A)(i) in the case of an individual action twice the amount of any finance charge in connection with the transaction, or (ii) in the case of an individual action relating to a consumer lease under chapter E of this title [15 USCS §§ 1667 et seq.], 25 per centum of the total amount of monthly payments under the lease, except that the liability under this subparagraph shall not be less than $100 nor greater than $1,000; or (B) in the case of a class action, such amount as the court may allow, except that as to each member of the class no minimum recovery shall be applicable, and the total recovery in such action shall not be more than the lesser of $500,000 or 1 per centum of the net worth of the creditor; and
 (3) in the case of any successful action to enforce the foregoing liability, the costs of the action, together with a reasonable attorney's fee as determined by the court. In determining the amount of award in any class action, the court shall consider, among other relevant factors, the amount of any actual damages awarded, the frequency and persistence of failures of compliance by the

creditor, the resources of the creditor, the number of persons adversely affected, and the extent to which the creditor's failure of compliance was intentional.

2. Section 70a of the Bankruptcy Act, 11 U.S.C. § 110, reads in part:

 § **110. Title to property**

 (a) The trustee of the estate of a bankrupt and his successor or successors, if any, upon his or their appointment and qualification, shall in turn be vested by operation of law with the title of the bankrupt as of the date of the filing of the petition initiating a proceeding under this title, except insofar as it is to property which is held to be exempt, to all of the following kinds of property wherever located . . .

 * * * * * *

 (5) property, including rights of action, which prior to the filing of the petition he could by any means have transferred or which might have been levied upon and sold under judicial process against him, or otherwise seized, impounded, or sequestered: *Provided,* That rights of action ex delicto for libel, slander, injuries to the person of the bankrupt or of a relative, whether or not resulting in death, seduction, and criminal conversation shall not vest in the trustee unless by the law of the State such rights of action are subject to attachment, execution, garnishment, sequestration, or other judicial process: . . .
 (6) rights of action arising upon contracts, or usury, or the unlawful taking or detention of or injury to his property; . . ..

3. *See* n. 1, *supra.*

Following stipulations of the parties as to all the factual matters summarized above, trustee Murphy moved the district court for summary judgment. The only issue before the district court was whether the Westbrooks' cause of action passed to the trustee as part of the estate in bankruptcy. On four different theories the district court held that the trustee has standing to assert the Truth in Lending action against HFC. HFC appeals.

## II.

Section 70a of the Bankruptcy Act, 11 U.S.C. § 110(a),[4] sets forth the forms of property which pass to the trustee as part of the bankrupt's estate upon adjudication. With certain stated exceptions, § 70a(5) provides that the trustee in bankruptcy acquires title to property, including rights of action, 1) which the bankrupt "could by any means have transferred"; or 2) which "might have been levied upon and sold under judicial process . . . or otherwise seized, impounded or sequestered." Section 70a(6) gives the trustee title to 1) "Rights of action arising upon contracts"; and to 2) "Rights of action arising upon . . . usury . . . .."

The district court, relying on *Porter v. Household Finance Corporation,* 385 F.Supp. 336 (S.D.Ohio 1974), held that the Westbrooks' cause of action under the Truth in Lending Act falls within each of the four described forms of property which pass to the trustee in bankruptcy pursuant to §§ 70a(5) and 70a(6). Since we find that the cause of action herein is a right of action which the bankrupt "could . . . have transferred" prior to bankruptcy within the meaning of § 70a(5), we do not reach the alternative bases for the holding of the district court.

 The Truth in Lending Act and Regulation Z are both silent as to the transferrability of a claim under § 130(a)(2)(A). The parties to this appeal are in agreement, based on *Schreiber v. Sharpless,* 110 U.S. 76, 3 S.Ct. 423, 28 L.Ed. 65 (1884); *Bowles v. Farmers National Bank of Lebanon, Ky.,* 147 F.2d 425 (6th Cir. 1945), and *In re*

*Schmelzer,* 350 F.Supp. 429 (S.D.Ohio 1972), aff'd, 480 F.2d 1074 (6th Cir. 1973), that a cause of action is transferrable for Bankruptcy Act purposes if the action would "survive" the death of the holder, but that actions for penalties or forfeitures do not survive and thus are not transferrable. The question of survivability and the question whether the cause of action seeks to recover a penalty are matters of federal law. *Bowles, supra,* 147 F.2d at 430. Adopting the rationale of the *Porter, supra,* 385 F.Supp. 336, decision, the district court concluded that § 130(a)(2)(A) of the Truth in Lending Act was remedial and not penal in nature. The district court held that the cause of action survived according to general principles of common law, and was thus transferrable for purposes of § 70(a)(5) of the Bankruptcy Act. HFC contests the district court's finding that a § 130(a)(2)(A) cause of action is remedial rather than penal in nature.

Mr. Justice Gray discussed the problem of identifying penal laws at some length in *Huntington v. Attrill,* 146 U.S. 657, 13 S.Ct. 224, 36 L.Ed. 1123 (1892):

In the municipal law of England and America, the words "penal" and "penalty" have been used in various senses. Strictly and primarily, they denote punishment, whether corporal or pecuniary, imposed and enforced by the State, for a crime or offence against its laws. *United States v. Reisinger,* 128 U.S. 398, 402, 9 S.Ct. 99, 32 L.Ed. 480; *United States v. Chouteau,* 102 U.S. 603, 611, 26 L.Ed. 246. But they are also commonly used as including any extraordinary liability to which the law subjects a wrongdoer in favor of the person wronged, not limited to the damages suffered. They are so elastic in meaning as even to be familiarly applied to cases of private contracts, wholly independent of statutes, as when we speak of the "penal sum" or "penalty" of a bond. In the words of Chief Justice Marshall: "In general, a sum of money in gross, to be paid for the non-performance of an agreement, is considered as a penalty, the legal operation of which is to

4. *See* n. 2, *supra.*

cover the damages which the party, in whose favor the stipulation is made, may have sustained from the breach of contract by the opposite party." *Tayloe v. Sandiford,* 7 Wheat. 13, 17, 5 L.Ed. 384.

Penal laws, strictly and properly, are those imposing punishment for an offence committed against the State, and which, by the English and American constitutions, the executive of the State has the power to pardon. Statutes giving a private action against the wrongdoer are sometimes spoken of as penal in their nature, but in such cases it has been pointed out that neither the liability imposed nor the remedy given is strictly penal.
146 U.S. at 666–67, 13 S.Ct. at 227.

■ Although the context of the above quotation was peculiar to the issues presented in the *Huntington* case, Mr. Justice Gray's observations and the interpretations and applications of *Huntington* in later cases give us some guidelines for assessing the extent to which the statutory provisions here involved are penal in nature. Three factors in particular deserve attention: 1) whether the purpose of the statute was to redress individual wrongs or more general wrongs to the public; 2) whether recovery under the statute runs to the harmed individual or to the public; and 3) whether the recovery authorized by the statute is wholly disproportionate to the harm suffered. *See Huntington, supra,* 146 U.S. at 666–69, 13 S.Ct. 224; *Bowles, supra,* 147 F.2d at 428; *Porter, supra,* 385 F.Supp. at 340–42.

The Supreme Court reviewed the history and purposes of the Truth in Lending Act in *Mourning v. Family Publications Service, Inc.,* 411 U.S. 356, 363–65, 93 S.Ct. 1652, 1657, 36 L.Ed.2d 318 (1973) as follows:

Passage of the Truth in Lending Act in 1968 culminated several years of congressional study and debate as to the propriety and usefulness of imposing mandatory disclosure requirements on those who extend credit to consumers in the American market. By the time of passage, it had become abundantly clear that the use of consumer credit was expanding at an extremely rapid rate. From the end of World War II through 1967, the amount of such credit outstanding had increased from $5.6 billion to $95.9 billion, a rate of growth more than 4½ times as great as that of the economy. Yet, as the congressional hearings revealed, consumers remained remarkably ignorant of the nature of their credit obligations and of the cost of deferring payment. Because of the divergent, and at times fraudulent, practices by which consumers were informed of the terms of the credit extended to them, many consumers were prevented from shopping for the best terms available and, at times, were prompted to assume liabilities they could not meet.

\* \* \* \* \* \*

The Truth in Lending Act was designed to remedy the problems which had developed. The House Committee on Banking and Currency reported, in regard to the then proposed legislation:

"[B]y requiring all creditors to disclose credit information in a uniform manner, and by requiring all additional mandatory charges imposed by the creditor as an incident to credit be included in the computation of the applicable percentage rate, the American consumer will be given the information he needs to compare the cost of credit and to make the best informed decision on the use of credit."

This purpose was stated explicitly in § 102 of the legislation enacted:

"The Congress finds that economic stabilization would be enhanced and the competition among the various financial institutions and other firms engaged in the extension of consumer credit would be strengthened by the informed use of credit. The informed use of credit results from an awareness of the cost thereof by consumers. It is the purpose of this subchapter to assure a meaningful disclosure of credit terms so that the consumer will be able to compare more readily the various credit terms available to him and avoid

the uninformed use of credit." (Footnotes omitted.)

In interpreting various sections of the statute, the courts have recognized the Act's remedial character and generally have construed the act liberally to effectuate its purposes. *See. e. g., Littlefield v. Walt Flanagan and Company,* 498 F.2d 1133, 1136 (10th Cir. 1974); *Eby v. Reb Realty, Inc.,* 495 F.2d 646, 650 (9th Cir. 1974); *North Carolina Freed Company, Inc. v. Board of Governors of the Federal Reserve System,* 473 F.2d 1210, 1214 (2d Cir.), *cert. denied,* 414 U.S. 827, 94 S.Ct. 48, 38 L.Ed.2d 61 (1973); *Ratner v. Chemical Bank New York Trust Company,* 329 F.Supp. 270, 280 (S.D. N.Y.1971).

■ The "twice the finance charge" recovery provisions of § 130(a)(2)(A) of the Act were intended by Congress as a means of achieving the enforcement of the Act by encouraging private causes of action. *Ratner, supra,* 329 F.Supp. at 280–81. The Supreme Court in *Mourning, supra,* 411 U.S. at 376, 93 S.Ct. 1652 referred to the liability created by § 130 as a "civil penalty," but the Court stated that this was not the kind of penalty courts must construe within the narrow limits reserved for strictly penal enactments. Chief Justice Burger explained:

> Section 130 provides that the penalty assessed shall be twice the amount of the finance charge imposed, but not less than $100. Since the civil penalty prescribed is modest and the prohibited conduct clearly set out in the regulation, we need not construe this section as narrowly as a criminal statute providing graver penalties, such as prison terms.

The recovery provided in § 130 runs in favor of the individual. State involvement in the enforcement of the Act is limited to the criminal liability provisions of § 112, 15 U.S.C. § 1611, and the administrative enforcement provisions of § 108, 15 U.S.C. § 1607. As Chief Justice Burger noted in the foregoing quotation from *Mourning,* the dollar amount of the recovery authorized by § 130 is modest. Congress was aware that users of consumer credit who are not provided the disclosures required by the Truth in Lending Act would have difficulty demonstrating the precise dollar amount of their injuries. As the court in *Porter* observed:

> The misrepresentation of the cost of credit may have prevented the debtor from obtaining cheaper credit after comparison shopping. The debtor's actual damages are difficult to ascertain, Nonetheless, the creditor has injured the debtor in his monetary interests by misrepresenting the cost of credit. And the Truth-in-Lending Act avoids the difficulty in calculating damages "by providing for liquidated damages" of twice the amount of the finance charge. (Footnote omitted.) 385 F.Supp. at 342.

■ HFC contends that § 130 must be penal because it allows the consumer to recover not only actual damages but "twice the finance charge" in addition to actual damages. This contention is without merit. The fact that the statute allows for accumulated recovery does not convert an otherwise remedial statutory scheme into a penal one. *See Huntington, supra,* 146 U.S. at 667–68, 13 S.Ct. 224. Moreover, as the court noted in *Porter, supra,* 385 F.Supp. at 341, the Supreme Court, this court and the courts of numerous other circuits have held a number of statutory schemes authorizing multiple recoveries and minimum recoveries greater than actual damages to be remedial and not to impose penalties where the wrong addressed by the statute is primarily a wrong to the individual.[5] Such is the case with the Truth in Lending Act. The § 130 cause of action is not made penal by the fact that the statute allows cumulative recoveries as a vehicle for encouraging enforcement.

---

**5.** Treble damages actions under the anti-trust and patent laws are two examples of statutory schemes which authorize recoveries substantially in excess of "actual" damages but which have been held not to be penalties (and thus to survive). Relevant decisions are catalogued in *Porter, supra,* 385 F. Supp. at 341.

The Truth in Lending Act ultimately serves the dual purpose of providing a remedy for harm to the monetary interests of individuals while serving to deter socially undesirable lending practices. Congress focused on the individual consumer of credit as the person primarily injured who should be encouraged to prosecute actions and should be allowed to recover directly and adequately for harms done. This is not the sort of statutory scheme properly characterized as penal. We agree with the conclusion of the district court in *Porter, supra,* 385 F.Supp. at 344, that the cause of action for tortious interference with property authorized by § 130 of the Truth in Lending Act would survive at common law. We hold that the cause of action in the present case is transferrable and that it passed to the trustee in bankruptcy pursuant to § 70 a(5) of the Bankruptcy Act.

The decision of the district court is affirmed and the case remanded for further proceedings.