**FEDERAL TRADE COMMISSION,**
**Plaintiff,**

v.

**CAPITAL CITY MORTGAGE CORP.,**
**et al., Defendants.**

**No. CIV.A. 98–237GK.**

United States District Court,
District of Columbia.

May 6, 2004.

Jeffrey D. Robinson, Kurt Hirsch, Elizabeth Torrant Sheldon, Baach Robinson & Lewis PLLC, John Peter Relman, Relman & Associates, Richard Ritter, Washington Lawyers' Committee, Washington, DC, for Movants.

Philip M. Musolino, Musolino & Dessel, Washington, DC, for Defendant/ThirdParty Plaintiff.

Jack A. Gould, Matthew William Lee, Eccleston & Wolf, Dennis John Quinn, Kevin Michael Murphy, Carr Maloney P.C., Washington, DC, Stephen Norman Goldberg, Cohn, Goldberg & Deutsch, LLC, Towson, MD, James Richard Bucher, Sasscer, Clagett & Bucher, Upper Marlboro, MD, for ThirdParty Defendants.

## MEMORANDUM OPINION

KESSLER, District Judge.

Amanda Quester, Bradley H. Blower, Sandra Mitchell Wilmore, Alain Herbert Sheer, Federal Trade Commission, Laura D. Berger, Lauren E. Willis, Ori Lev, U.S. Department of Justice, Lisa J. Dessel, Musolino & Dessel, Washington, DC, for Plaintiff.

Charles Holton Acker, III, Leticia Maria Watson, Capital City Mortgage Corp., Lawrence Bradley Bernard, Barnes & Thornburg, Rena Karen Schild, Musolino & Dessel, Christopher Kip Schwartz, Holland & Knight LLP, Amy M. McNamer, Hillary A. Davidson, J. Edward Wicht, Zuckerman Spaeder, LLP, Washington, DC, Laurie B. Horvitz, Nathan I. Finkelstein, Finkelstein & Horvitz, Bethesda, MD, for Defendants.

The Federal Trade Commission ("FTC") brought this action in 1998, alleging that Capital City Mortgage Corporation ("Capital City"), its President, Thomas K. Nash ("Nash"), and Eric J. Sanne, former general counsel for Capital City (collectively, "Defendants"), violated several federal statutes in connection with their consumer and business credit transactions, including the Equal Credit Opportunity Act ("ECOA"), 15 U.S.C. §§ 1691–1691(f), the Truth in Lending Act ("TILA"), 15 U.S.C. §§ 1601–1666(j), and the Federal Trade Commission Act ("FTC Act"), 15 U.S.C. §§ 41–48.[1] Counsel and the Court were prepared to begin an eight week bench trial on April 8, 2002. However, trial was delayed indefinitely after Thomas K. Nash died on April 6, 2002.

1. The FTC alleges that Capital City and Nash violated the ECOA, its implementing Regulation B, 12 C.F.R. § 202, 15 U.S.C. §§ 41–58, TILA, it's implementing Regulation Z, 12 C.F.R. § 226, and the FTC Act, and that all Defendants violated the Fair Debt Collection Practices Act, 15 U.S.C. §§ 1692–1692(o).

On April 17, 2002, the Estate of Thomas K. Nash was substituted for Nash as a Defendant in this matter. On March 17, 2003, the Court granted Plaintiff's Motion for Leave to File a Second Amended Complaint on March 17, 2003, thus allowing the FTC to add eight relief Defendants [2] and to allege that a constructive trust should be imposed on funds passed to them because these relief Defendants "received ill-gotten gains from the loans serviced by [Capital City] and may be the only significant source of redress for consumers in the wake of Nash's death." Pl.'s Mot. at 2.[3] The Court found that FTC's Second Amended Complaint was "not untimely, nor made in bad faith, nor futile, nor unduly prejudicial in light of all the interests to be balanced." Mem. Op. at 12. However, the Court did acknowledge that Defendants' "futility arguments [regarding the constructive trust claims] raise complex legal issues that will be fully briefed at the appropriate time." *Id.*

This matter is now before the Court on the Motion of Defendants Capital City, Estate of Thomas K. Nash, Thomas K. Nash Family Trust, and Nash Marital Trust to Dismiss the Second Amended Complaint In Part For Failure to State a Claim. Upon consideration of the Motion, Opposition, Reply, and the entire record herein, for the reasons discussed below, Defendants' Motion to Dismiss the Second Amended Complaint In Part is **denied.**

**2.** On May 12, the Court granted in part and denied in part Defendants' Motion for Reconsideration regarding the previously added relief defendants. The Court found that "the Thomas K. Nash Family Trust, (Alan W. Nash trustee) and the Nash Marital Trust Under Will of Thomas K. Nash (Marcia C. Fidis and Caroline Koestner Nash co-trustees)...remain in this case as relief Defendants; the three trusts designated for Nash's daughters (the Katherine R. Nash Trust, the Ann E.

## I. STANDARD OF REVIEW

"A motion to dismiss for failure to state a claim upon which relief can be granted is generally viewed with disfavor and rarely granted. For the purposes of such a motion, the factual allegations of the complaint must be taken as true, and any ambiguities or doubts concerning the sufficiency of the claim must be resolved in favor of the pleader." *Doe v. U.S. Dep't of Justice,* 753 F.2d 1092, 1102 (D.C.Cir.1985) (internal citations omitted). Thus, "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). Accordingly, the factual allegations of the complaint must be presumed true and liberally construed in favor of the plaintiff. *Shear v. National Rifle Ass'n of Am.,* 606 F.2d 1251, 1253 (D.C.Cir.1979).

## II. ANALYSIS

Defendants move to dismiss two claims against them presented in the Second Amended Complaint. First, they argue that the FTC has failed to state a valid constructive trust claim because the Second Amended Complaint "fails to allege key elements that are required for imposition of a constructive trust." Defs.' Mot. at 4. Defendants also argue that the death of Mr. Nash has abated all ECOA claims against the Estate of Thomas K. Nash. In response, the FTC argues that its Second

Nash Trust, and the Carolyn D. Nash Trust) and Donald S. Nash are struck as relief Defendants." May 12, 2003, Order at 2.

**3.** Accordingly, the Second Amended Complaint added ¶¶ 18–25 to describe the parties, ¶ 48 to allege that these relief Defendants received ill-gotten gains, and a prayer for relief (h) for imposition of the constructive trust.

Amended Complaint "fully satisfies the fair notice requirement of F.R.C.P. 8 with respect to the constructive trust remedy," and that the ECOA civil penalty claim is still appropriate after Mr. Nash's death. Pl.'s Opp'n at 2.

### A. FTC's Second Amended Complaint Sufficiently Pleads a Constructive Trust Claim against Defendants.

A constructive trust arises "whenever a party has obtained property which does not belong to him, and which he cannot in good conscience withhold from another who is beneficially entitled to it." *Blake Construction Co. v. American Vocational Association, Inc.*, 419 F.2d 308, 311 (D.C.Cir.1969). A court imposing a constructive trust can "reach the property either in the hands of the original wrongdoer, or in the hands of any subsequent holder, until a purchaser of it in good faith and without notice acquires a higher right and takes the property relieved from the trust." *Harris Trust & Savs. Bank v. Salomon Smith Barney, Inc.*, 530 U.S. 238, 250–51, 120 S.Ct. 2180, 147 L.Ed.2d 187 (2000) (internal quotations and citations omitted).

It is undisputed that *Alsco–Harvard Fraud Litigation*, 523 F.Supp. 790 (D.D.C. 1981), establishes the three requirements that must be proven to impose a constructive trust.

First, there must be a wrongful act. Second, specific property acquired by the wrongdoer must be traceable to the wrongful behavior. Finally, there must be a reason why the party holding the property should not be allowed in good conscience to keep it.

*Id.*, 523 F.Supp. at 806–7 (internal citations omitted) (the "*Alsco–Harvard* requirements"); *see also SEC v. Huttoe*, No. 96–2543, 1998 WL 34078092, at *13 (D.D.C.

Sept. 14, 1998) (finding that in order to establish a constructive trust, a "[p]laintiff must establish that (1) there is a wrongful act; (2) specific property acquired by the wrongdoer must be traceable to the wrongful act; and (3) there is some reason why the party holding the property should not, in good conscience, be permitted to keep the property").

The FTC alleges that its Second Amended Complaint "on its face fairly meets the *Alsco–Harvard* [requirements]." Pl.'s Opp'n at 8. The FTC claims that the first wrongful act requirement is satisfied by ¶¶ 26–47 and ¶¶ 49–52, which allege that Capital City and Nash committed wrongful acts by violating the FTC Act and TILA, respectively. The FTC argues that the Second Amended Complaint satisfies the second specific property requirement because it alleges that as a result of the FTC Act and TILA violations, Defendants acquired money and property when their actions caused borrowers to be overcharged on their loans, to default, and to lose or impair title on their homes. Second Amended Compl. ¶ 32; *see also* ¶¶ 33, 47, 50–52. Finally, the FTC claims that it has satisfied the third requirement, in which a party holding the property should not be allowed in good conscience to keep it, by alleging that each relief defendant was unjustly enriched by receiving money and other property obtained unlawfully by Capital City and Nash from their borrowers through violations of the FTC Act and TILA. *See* Second Amended Compl. ¶¶ 32, 33, 47, 51, 52.

■ Presuming the factual allegations of the FTC's Second Amended Complaint to be true and liberally construing those facts in favor of the FTC, as the Court must at this stage in the proceedings, *Shear*, 606 F.2d at 1253, the Court finds that the FTC has properly alleged in its Second Amended Complaint each of the

*Alsco–Harvard* requirements for establishing a constructive trust claim.

Defendants argue that the Second Amended Complaint should be dismissed because the FTC has failed to allege that "the relief defendants received assets without consideration, despite the clear direction of the district court." Defs.' Mem. at 5 (citing *FTC v. First Alliance Mortgage Co.*, No. SA CV 00–965 DOC (EEx) (C.D.Cal.)). In response, the FTC argues that this Court is not bound by the *First Alliance* court's findings regarding California law. Moreover, even if it were necessary to plead absence of consideration under District of Columbia law, the FTC argues that its allegation of unjust enrichment fulfills that requirement because "[b]y definition and by implication, unjust enrichment means that the relief defendants have no legitimate claim to the proceeds of Capital City and Nash's law violations." Pl.'s Opp'n at 9.

Defendants also argue that Plaintiff will not be able to prove the elements of a constructive trust claim against them because the FTC cannot show specific holdings of money or property by the Relief Defendants that came from Capital City or Nash's violations and that any attempt to gain such proof will be timely and costly. *See* Defs.' Mot. at 6–8; Defs.' Reply at 2–5. They also state that "[t]he FTC apparently concedes that it cannot comply with the tracing requirement." Defs.' Mot. at 9 n. 3. However, the FTC argues that it has

"made no such concession and make[s] none now." Pl.'s Opp'n at 11.

To the extent that Defendants allege the constructive trust claims in the Second Amended Complaint should be dismissed given the lack of specific showing of ill-gotten gains by the Relief Defendants and the perceived difficulties the FTC will have in meeting the tracing requirement, these are issues of proof and fact that do not weigh in a court's decision regarding a motion to dismiss. *See Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974) (stating that in deciding a motion to dismiss, "[t]he issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims").[4]

Accordingly, the Court concludes that the FTC has alleged a valid constructive trust claim in its Second Amended Complaint, which cannot be dismissed.

### B. The ECOA Claims against the Relief Defendants from the Estate of Thomas K. Nash Did Not Abate as a Result of Mr. Nash's Death.

The FTC's Second Amended Complaint seeks civil penalties against Capital City and the Relief Defendants from the Estate of Thomas K. Nash for alleged violations of the ECOA and its implementing Regulation B. The ECOA authorizes the FTC to use all of its powers under the FTC Act to enforce the ECOA, "including the power to

---

4. Defendants rely upon a number of cases in support of their tracing argument, but these cases were decided primarily on motions for summary or declaratory judgment, in which courts can consider issues of fact and proof. *See, e.g., TMG II v. United States*, 1 F.3d 36 (D.C.Cir.1993) (appeal of district court's grant of summary judgment on constructive trust claims); *SEC v. Huttoe*, No. 96–2543, 1998 WL 34078092, at *13 (D.D.C. Sept. 14, 1998) (denying motion for summary judgment for failure to specify specific assets gained through constructive trust). In addition, while *Bender v. CenTrust Mortgage Corp.*, 51 F.3d 1027 (11th Cir.1995), involved an appeal of a motion to dismiss a constructive trust claim, that case is distinguishable from the present case because the *Bender* plaintiff sought to place the constructive trust claim on general assets; the FTC seeks to perform asset tracing to identify those *specific*, not general, assets unjustly transferred to the Relief Defendants.

enforce [Regulation B] in the same manner as if the violation had been a violation of [an FTC] trade regulation rule." 15 U.S.C. § 1691c(c). The FTC contends that Capital City and Nash violated the ECOA when they failed "to collect information needed to determine whether discrimination occurred [in Capital City's lending practices]" and when they failed "to provide adverse action notices to those denied credit." Pl.'s Opp'n at 2.

Defendants argue that because the ECOA civil penalties sought by the FTC are penal in nature, any claim for those penalties against the Relief Defendants abated with Nash's death. *See United States v. Edwards,* 667 F.Supp. 1204, 1215 (W.D.Tenn.1987) (concluding that a Clean Water Act civil penalty did not survive the defendant's death and could not be assessed against his estate because it was "penal in character") (relying, in part, on *Ex Parte Schreiber,* 110 U.S. 76, 3 S.Ct. 423, 28 L.Ed. 65 (1884)). The FTC responds that these penalties did not abate with Nash's death and are entirely appropriate because they address harm to the public from discrimination and provide general deterrence against discrimination, goals which Congress has concluded are not penal in nature.

In determining whether civil penalties are penal in nature, and should therefor abate upon the death of a defendant, courts have generally applied a three-part test, which considers "1) whether the purpose of the statute was to redress individual wrongs or more general wrongs to the public; 2) whether recovery under the statute runs to the harmed individual or to the public; and 3) whether the recovery authorized by the statute is wholly disproportionate to the harm suffered." *Murphy v. Household Finance Corporation,* 560 F.2d 206, 209 (6th Cir.1977).

When applying the *Murphy* factors in other cases, most circuit courts have concluded that civil penalties, especially those deriving from consumer protection statutes, are remedial, not penal, in nature. *See. id.* (finding TILA civil penalties for "twice the finance charge" were remedial, not penal); *James v. Home Const. Co. of Mobile, Inc.,* 621 F.2d 727, 730 (5th Cir. 1980) (applying *Murphy* factors to determine that civil penalties under TILA are remedial, not penal); *Mike Smith Pontiac, GMC, Inc. v. Mercedes–Benz of North America, Inc.,* 32 F.3d 528, 534 n. 3 (11th Cir.1994) (applying *Murphy* factors to determine that civil penalties under the Dealer Protection Act are remedial, not penal); *but see Genty v. Resolution Trust Corp.,* 937 F.2d 899, 912 (3rd Cir.1991) (applying *Murphy* factors to determine that civil penalties under RICO are penal).

In applying the *Murphy* factors to the facts in this case, we must first determine whether the purpose of the ECOA was to redress individual wrongs or more general wrongs to the public. Defendants argue that the FTC has conceded this point by arguing that ECOA civil penalties take into account injury to the public. *See* Pl.'s Opp'n at 14–16. While it is true that some courts have considered that civil penalties can act as a general deterrent to the public, those courts have also recognized that individual consumers are protected by the government's enforcement of consumer protection statutes. *See United States v. Danube Carpet Mills,* 737 F.2d 988, 994 (11th Cir.1984) (allowing the FTC to pursue civil penalties against the manufacturer of dangerous carpets even when there was not specific evidence that consumers had been harmed by the carpets). Congress enacted the ECOA to protect consumers from having their credit applications denied for discriminatory reasons, such as race, sex, marital status, and age. *See Brothers v. First Leasing,* 724 F.2d

789, 791 (9th Cir.1984),; *Silverman v. Eastrich Multiple Investor Fund, L.P.,* 51 F.3d 28, 32–33 (3rd Cir.1995). While the overall enforcement of the ECOA may deter discrimination-based lending practices, the Act was clearly intended to protect individual consumers from discriminatory credit practices.

Second, the Court must determine whether the ECOA recovery runs to the harmed individual or to the public. In this case, the ECOA civil penalties sought in the FTC's Second Amended Complaint would flow to the public at large and not to those individual consumers harmed by the alleged acts of Capital City and Nash. While payment to the government "weighs in favor of characterizing this relief as penal," courts have recognized that such payments do not "compel the conclusion that it is penal in nature" because the penalties themselves can be derived from " 'a type of social welfare legislation [that] is remedial.' " *Citronelle–Mobile Gathering, Inc. v. O'Leary,* 499 F.Supp. 871, 887 (D.Ala.1980) (quoting *In re Wood,* 643 F.2d 188, 192 (5th Cir.1979)). In this case, the FTC's authority to collect ECOA penalties flows from the FTC Act, a statute found to be remedial, not penal, in nature. *See United States v. J.B. Williams Company, Inc.,* 498 F.2d 414, 421 (2d Cir.1974) (concluding that defendants were not entitled to a jury trial under the Sixth Amendment before any civil penalties could be imposed). Accordingly, regardless of the fact that Defendants would pay any ECOA penalties to the government instead of to individual consumers, the Court concludes that these penalties are not penal because the FTC's authority to collect them arises from a remedial, consumer protection statute.

Finally, the Court must determine whether the recovery the FTC is authorized to seek under the ECOA is wholly disproportionate to the harm suffered. *See International Cablevision, Inc., v. Sykes,* 172 F.R.D. 63, 69 (W.D.N.Y.1997) (finding that while first two factors of the *Murphy* test indicated that penalties under the Cable Communications Policy Act were remedial in nature, the $10,000 fine was still penal because it was so disproportionate to the harm caused). In this case, the FTC is seeking $11,000 for each of Defendants' alleged violations, which Defendants assert could amount to more than $3 million in civil penalties. *See* Defs.' Mot. at 12. However, given that many of the consumers harmed by Defendants' allegedly illegal lending practices were charged very high interest rates and/or forced to foreclose on their homes, the Court finds these fines to be proportionate, and thus remedial. *See Riggs v. Government Emp. Financial Corp.,* 623 F.2d 68, 71 (9th Cir.1980) (concluding that the overall nature of TILA penalties was remedial because "when an uninformed consumer loses the opportunity to secure better credit terms elsewhere, actual damages may be difficult to ascertain").

In this case, the ECOA penalties sought by the FTC have both remedial and penal qualities. While other courts have also acknowledged the dual remedial and penal nature of penalties assessed under consumer protection statutes, those courts have often found those penalties to be remedial, not penal, in nature. *See Citronelle–Mobile Gathering,* 499 F.Supp. at 887 (finding that while "most modern consumer remedies" serve a dual purpose of "remedying harm to the individual who could not practically protect himself" and "deter[ing] prohibited business practices for the good of the general public," these penalties did not serve an overall penal purpose). In fact, the Supreme Court found that when a consumer protection statute, such as TILA, imposes "modest" civil penalties for prohibited conduct, those

penalties are remedial, not penal, in nature. *Mourning v. Family Publications Service, Inc.*, 411 U.S. 356, 376, 93 S.Ct. 1652, 36 L.Ed.2d 318 (1973). The Court concluded that by giving the FTC broad authority to enforce consumer protection statutes, Congress could not have intended that "those who fail to comply with [consumer protection regulations] be subject to no penalties or to criminal penalties alone." *Id.*

In this case, the FTC alleges that Defendants failed to take written applications or collect required information, thus making it more difficult for it to determine whether Capital City was discriminating against credit applicants based on their race, national origin, sex, marital status, or age. By failing to provide credit applicants with notice of adverse action and/or by providing inaccurate notices, as alleged, Defendants also ensured that rejected loan applicants were not properly informed of their rights under the ECOA and did not learn which federal agency to contact for assistance if they suspected a violation of those rights. Thus, Defendants' alleged violations clearly present the harm of permitting discriminatory conduct against individual consumers to go undetected and unremedied. Defendants should not avoid liability for such violations.[5] Accordingly, the Court concludes that the ECOA civil penalties sought by the FTC are remedial in nature and thus may be pursued against the Relief Defendants.

### III. CONCLUSION

The Court concludes that the FTC's Second Amended Complaint alleges a valid constructive trust claim against Defendants, which cannot be dismissed. In addition, the Court finds that the ECOA civil penalties asserted against the Relief Defendants did not abate with Nash's death. Accordingly, Defendants' Motion to Dismiss the Second Amended Complaint In Part is **denied**. An Order will issue with this Opinion.

### *ORDER*

The Federal Trade Commission ("FTC") brought this action in 1998, alleging that Capital City Mortgage Corporation ("Capital City"), its President, Thomas K. Nash ("Nash"), and Eric J. Sanne, former general counsel for Capital City (collectively, "Defendants"), violated several federal statutes in connection with their consumer and business credit transactions, including the Equal Credit Opportunity Act ("ECOA"), 15 U.S.C. §§ 1691–1691(f), the Truth in Lending Act ("TILA"), 15 U.S.C. §§ 1601–1666(j), and the Federal Trade Commission Act ("FTC Act"), 15 U.S.C. §§ 41–48.[1]

In April 2002, the Estate of Thomas K. Nash was substituted for Nash as a Defendant in this matter following his death. Thereafter, the Court granted Plaintiff's Motion for Leave to File a Second Amended Complaint, thus allowing the FTC to

---

**5.** Defendants argue that the "imposition of penalties on Mr. Nash's estate would only serve to punish innocent family members." Defs.' Mot. at 13. However, whether "innocent" or not, there is simply no reason to allow those same family members to *benefit* from conduct that, if proven, was harmful to many members of the public and against which fines can be imposed. Permitting the beneficiaries of the Nash Estate to retain the profits of Nash's allegedly illegal activity would "utterly frustrate" the purposes of the

ECOA. *See Citronelle–Mobile Gathering*, 499 F.Supp. at 888.

**1.** The FTC alleges that Capital City and Nash violated the ECOA, its implementing Regulation B, 12 C.F.R. § 202, 15 U.S.C. §§ 41–58, TILA, it's implementing Regulation Z, 12 C.F.R. § 226, and the FTC Act, and that all Defendants violated the Fair Debt Collection Practices Act, 15 U.S.C. §§ 1692–1692(o).

add the appropriate relief Defendants and to allege a constructive trust on funds passed to them.

This matter is now before the Court on the Motion of Defendants Capital City, Estate of Thomas K. Nash, Thomas K. Nash Family Trust, and Nash Marital Trust to Dismiss the Second Amended Complaint In Part For Failure to State a Claim. Upon consideration of the Motion, Opposition, Reply, and the entire record herein, for the reasons discussed in the accompanying Memorandum Opinion, it is hereby

**ORDERED** that Defendants' Motion to Dismiss the Second Amended Complaint In Part is **denied**.