**Dorothy M. LOWE, Plaintiff,**

v.

**EXPERIAN, et al. Defendants.**

**No. CIV.A. 03–2046–CM.**

United States District Court,
D. Kansas.

July 15, 2004.

James L. Renne, Arlington, VA, for Plaintiff.

David R. Vandeginste, Michael T. Metcalf, Miller Law Firm, P.C., Lyle J. Fuller, Spencer, Fane, Britt & Browne, Robert B. Best, Jr., Husch & Eppenberger, Jennifer Ann Donnelli, Lynn S. McCreary, Bryan Cave LLP, Kansas City, MO, Dustin B. Rawlin, Cleveland, OH, W. Robert King, Couch Pierce King & Hoffmeister, Chtd., Overland Park, KS, Daniel V. Conlisk, Spencer Fane Britt & Browne LLP, St. Louis, MO, for Defendants.

### MEMORANDUM AND ORDER

MURGUIA, District Judge.

Plaintiff filed the present suit on February 4, 2003, represented by her grandson, James Renne. On August 6, 2003, the court granted plaintiff's motion for attorney Blair K. Drazic to appear pro hac vice. On September 20, 2003, plaintiff passed away. Pending before the court are plaintiff's counsel's Motion to Substitute Parties (Doc. 74), and Plaintiff's Compliance with Order (Doc. 117). Also pending before the court are Defendants' (1) Joint Memorandum in Opposition to the Motion to Substitute Parties Filed on Behalf of Plaintiff Dorothy M. Lowe; and (2) Joint Consolidated Motion to Dismiss Complaint and Memorandum in Support (Doc. 87), Defendants' Consolidated Motion to Dismiss Amended Complaint and Memorandum in Support (Doc. 108), and Defendant Associates First Capital Corporation's Motion to Dismiss Plaintiff's Amended Complaint and Memorandum in Support Thereof (Doc. 109).

## I. Background

After plaintiff's counsel filed the Motion to Substitute Parties on January 1, 2004, defendants filed two separate motions, based on plaintiff's original complaint, opposing substitution and requesting that the court dismiss the case.

On February 25, 2004, the court noted that plaintiff had not responded to defendant Bank One, Delaware, N.A.'s ("Bank One") July 14, 2003, motion to dismiss the complaint or for a more definite statement, and the court ordered plaintiff's counsel to show cause why the court should not grant Bank One's motion as unopposed. Plaintiff's counsel responded on March 25, 2004, and on March 31, 2004, the court ordered plaintiff's counsel to file an amended complaint. On April 12, 2004, plaintiff's counsel filed an amended complaint. Defendants have submitted amended motions to dismiss based on plaintiff's counsel's amended complaint. See Docs. 108, 109.

In reference to the Motion to Substitute Parties, the court, on May 20, 2004, issued an order requiring plaintiff's counsel to supplement the motion with additional evidence demonstrating compliance with Federal Rule of Civil Procedure 25. Plaintiff's counsel initially requested that they be allowed to file the evidence under seal, which the court denied, and then submitted evidence in response to the court's order.

## II. Legal Standards

Federal Rule of Civil Procedure 25 provides for substitution of a deceased party:

If a party dies and the claim is not thereby extinguished, the court may order substitution of the proper parties. The motion for substitution may be made by any party or by the successors

or representatives of the deceased party and, together with the notice of hearing, shall be served on the parties as provided in Rule 5 and upon persons not parties in the manner provided in Rule 4 for the service of a summons, and may be served in any judicial district.

## III. Analysis

### A. Proper Party

Plaintiff's counsel filed the Motion to Substitute Parties and requested that the court substitute as plaintiff "Dorothy Marie Lowe's Trust and the estate of Dorothy M. Lowe." Pl. Mtn. Sub. Ptys. at 1. Renne asserted standing to bring the motion as "counsel and trustee to the Trust of Dorothy Marie Lowe." *Id.* Defendants objected to Renne bringing the motion to substitute on the grounds that Renne had not been appointed administrator or executor of Lowe's trust and estate in compliance with Kansas probate procedure. In reply, plaintiff's counsel asserted that Lowe had created an *inter vivos* trust and named Renne as trustee. As the court explained in its May 20, 2004, Order, however, plaintiff's counsel had provided no evidence demonstrating the existence of Lowe's *inter vivos* trust; that Renne was appointed trustee and is, therefore, representative of the Trust; and, that, if Renne is the proper representative of the Trust, he effected proper service in accordance with Rule 25. Nevertheless, the court afforded plaintiff's counsel another opportunity to comply with Rule 25 and ordered them to submit evidence proving compliance with the requirements of the Rule. In response to the court's order, plaintiff's counsel submitted a one-page document entitled "Trust of Dorothy Marie Lowe" (the "Trust Document"). Unfortunately, plaintiff's counsel's supplemental filing raises additional issues rather than resolving the Rule 25 factors addressed in the court's May 20, 2004, Order.

Kansas law requires that a settlor have capacity and intent to create a valid trust. *See* Kan. Stat. Ann. § 58a–402. However, Dorothy M. Lowe's signature on the Trust Document appears to be misspelled as "Dorothay," which raises the question of whether Lowe was mentally capable of creating a trust, and defendants have presented additional evidence raising this issue. Lowe allegedly signed the Trust Document on June 11, 2002. Defendants have presented excerpts from Lowe's March 21, 2002, deposition testimony in which she stated that she was confused and did not know her own age. At a June 7, 2002, deposition, Lowe stated that she did not know the nature of the lawsuit she had filed and could not recall the number of grandchildren she had. Therefore, based on the evidence before it, the court cannot determine whether plaintiff had the requisite capacity to create a valid trust under Kansas law.

Further, as defendants point out, plaintiff's counsel has made no effort to comply with Federal Rule of Evidence 901(a) with respect to the Trust Document. Rule 901 requires that evidence be authenticated to support the court's finding that the "matter in question is what its proponent claims." Fed.R.Evid. 901(a). Authentication is a "condition precedent to admissibility," and the court will not consider evidence that has not been properly admitted in compliance with the requirements of the evidentiary rules. *Id.; see also United States v. Meienberg,* 263 F.3d 1177, 1181 (10th Cir.2001) ("Before evidence is admissible it must be authenticated.").

Consequently, based upon the shortcomings of plaintiff's counsel's evidence, the court denies plaintiff's counsel's motion to substitute parties. Nevertheless, the court will analyze the survivability of plaintiff's claims even if plaintiff's counsel had

properly substituted a party for deceased plaintiff.

### B. Survivability of Plaintiff's Claims

Rule 25(a) provides the procedure for substituting parties when the plaintiff has passed away. Whether the deceased plaintiff's claims survive her death, however, is a question of state or federal substantive law. *See* 7C Charles A. Wright, Arthur R. Miller and Mary Kay, Federal Practice and Procedure § 1952, at 526 (2d ed.1986).

### 1. Plaintiff's State–Law Tort Claims

In Kansas, whether a cause of action survives the plaintiff's death is determined by Kan. Stat. Ann. § 60–1801 and § 60–1802. Section 60–1801 provides:

> In addition to the causes of action which survive at common law, causes of action for mesne profits, or for an injury to the person, or to real or personal estate, or for any deceit or fraud, or for death by wrongful act or omission, shall also survive; and the action may be brought notwithstanding the death of the person entitled or liable to the same.

Section 60–1802 provides that "[n]o action pending in any court shall abate by the death of either or both the parties thereto, except an action for libel, slander, malicious prosecution or for a nuisance." Kansas courts have held that the two statutes are distinct in that § 60–1801 determines whether a cause of action survives the death of a party, while § 60–1802 provides the procedure for the continuation of an action by substitution when it does survive the party's death. *Gross v. VanLerberg,* 231 Kan. 401, 646 P.2d 471, 474 (1982).

### a. Defamation

Plaintiff makes a claim for defamation based upon defendants' allegedly publishing false information to third parties about plaintiff.

■ In Kansas, however, an action for defamation does not survive the death of the plaintiff. *Sellars v. Stauffer Communications, Inc.,* 9 Kan.App.2d 573, 684 P.2d 450, 453 (1984) (citing Kan. Stat. Ann. § 60–1802). Consequently, the court dismisses plaintiff's defamation claim against defendants.

### b. Negligence and Tortious Interference with Business Expectancy or Relationship

■ Plaintiff contends that she was the victim of fraud and identity theft and that defendants, companies operating in the credit industry, are liable for their failures to address plaintiff's identity theft as required by law. In particular, plaintiff claims that defendants' conduct amounted to, among other violations, negligence and tortious interference with business expectancy or relationship, resulting in her being incorrectly attributed with a poor credit rating and the adverse effects that flow from such a rating.

■ Plaintiff's claims cannot survive on the basis of being actions for "mesne profits, or for an injury . . . to real or personal estate, or for any deceit or fraud, or for death by wrongful act or omission." See Kan. Stat. Ann. § 60–1801. Nor can plaintiff's claims be characterized as an "injury to the person," as such a claim contemplates that the plaintiff suffer a physical injury in order for the claim to survive the plaintiff's death. *See Nicholas v. Nicholas,* 277 Kan. 171, 83 P.3d 214, 227–28 (2004).

■ Section 60–1801 also provides for the survival of "causes of action which survive at common law." However, neither Kansas statute nor case law provides guidance on the actions that traditionally survived a plaintiff's death before enactment of § 60–1801. Moreover, and not surprisingly, commentators do not com-

pletely agree on which common-law tort actions did survive. *Compare Hawes v. Johnson & Johnson*, 940 F.Supp. 697 (D.N.J.1996) ("Under the common law rule, tort actions involving wrongdoings committed against *real property* and those affecting a person's tangible or intangible interests abated upon the death of a party." (emphasis added) (citing W. Page Keeton et al., Prosser and Keeton on the Law of Torts § 125A, at 940–41 (5th ed.1984))) *with* 1 Am.Jur.2d *Abatement, Survival, and Revival* § 52 (2004) ("[C]auses of action arising from torts to *real and personal property* survive and pass to the personal representative of the decedent, while purely personal torts do not survive in the absence of statutory provision.") (emphasis added). The distinction the court finds between tort actions that survive or abate turns on whether the injury results in property loss or else constitutes an injury to reputation or emotion. As the Fourth Circuit has explained,

> "It was a rule of the common law that most causes of action based on contract survived, while most of those founded on tort abated. But the rule was subject to various exceptions. The real test, so far as tort actions were concerned, seems to have been whether the injury on which the cause of action was based affected property rights, or affected the person alone. In the former case the cause of action survived, while in the latter it abated."

*Barnes Coal Corp. v. Retail Coal Merch. Ass'n*, 128 F.2d 645, 649 (4th Cir.1942) (quoting *Sullivan v. Assoc. Billposters and Distrib.*, 6 F.2d 1000, 1004 (2d Cir.1925)). A cause of action for loss or injury to property may survive the death of the plaintiff when it seeks redress by compensating the deceased plaintiff's estate and/or personal representatives. *Id.*

█ Plaintiff's amended complaint states that as a result of defendants' al-leged conduct she "sustained one or more losses of credit opportunities that would have made her life much easier, more enjoyable, and avoided severe aggravation and humiliation, among other severe, unjust and unnecessary disturbances," and that she "suffered emotional distress." Pl. Am. Compl., at 5. Further, defendants' alleged tortious interference with plaintiff's business expectancy or relationship resulted in disruption of plaintiff's "expectancy, advantage, contract and/or relationship with the probability of future economic benefit in the form of loan applications."

Thus, plaintiff does not allege that she suffered damage to her real or personal property. Instead, plaintiff asserts that defendants' alleged actions resulted in damage to her reputation in the form of a poor credit rating, which thereby affected her potential ability to obtain the trust of creditors in the form of a loan. Plaintiff's tort claims are for injuries of a personal nature or for tangible or intangible interests, which were causes of actions that did not survive at common law. Therefore, the court dismisses plaintiff's negligence and tortious interference with business expectancy or relationship claims against defendants.

**2. Plaintiff's Federal Fair Credit Reporting Act Claim**

█ The survivability of a federal claim is governed by federal common law. *Smith v. Dep't of Human Services, State of Okla.*, 876 F.2d 832, 834 (10th Cir.1989). And "[t]he general rule under the federal common law is that an action for a penalty does not survive the death of the plaintiff." *Id.* at 834–35 (citing *In re Schreiber*, 110 U.S. 76, 80, 3 S.Ct. 423, 28 L.Ed. 65 (1884)). Therefore, a court must determine whether a the statute is penal in character, because it seeks to protect the public, or remedial in character, because

the law is meant to compensate for harm done to an individual. The Tenth Circuit distinguishes penal from remedial statutory actions by application of a three-part test enunciated in *Murphy v. Household Fin. Corp.*, 560 F.2d 206 (6th Cir.1977): " '1) whether the purpose of the statute was to redress individual wrongs or more general wrongs to the public; 2) whether recovery under the statute runs to the harmed individual or to the public; and 3) whether the recovery authorized by the statute is wholly disproportionate to the harm suffered.' " *Id.* (quoting *Murphy*, 560 F.2d at 209).

■ Application of the *Murphy* test reveals that the FCRA, like many federal statutes allowing a private cause of action, displays both penal and remedial characteristics. The congressional statement of findings in § 1681(a) refers to the importance of the FCRA to maintaining the "banking system," as well as protecting a consumer's rights. Multiple courts have interpreted the purpose of the FCRA to be protection of the individual consumer. *See Wiggins v. Dist. Cablevision, Inc.*, 853 F.Supp. 484 (D.D.C.1994) ("One of the central purposes of the FCRA is to protect an individual from inaccurate information in a consumer report."); *Williams v. Equifax Credit Info. Services*, 892 F.Supp. 951, 953 (E.D.Mich.1995) ("Courts have interpreted . . . [the FCRA] as an act intended to protect consumers from having inaccurate information circulated . . . and protect the reputation of the consumer." (citations omitted)). An individual may seek recovery under the FCRA, but the Federal Trade Commission may also bring an action to enforce compliance. *See* 15 U.S.C. §§ 1681s-2(b) and 1681s(a). Finally, an aggrieved consumer may recover compensatory damages under the FCRA or seek punitive-that is, disproportionate-damages for willful violations. *See* 15 U.S.C. § 1681n(a)(2).

On balance, the court finds that the FCRA is, overall, remedial in nature. Persuasive to the court's conclusion is the *Murphy* court's analysis of the Truth in Lending Act ("TLA"), 15 U.S.C. § 1601 *et seq.* The *Murphy* court noted that the Supreme Court, in *Mourning v. Family Publ'ns Service, Inc.*, 411 U.S. 356, 93 S.Ct. 1652, 36 L.Ed.2d 318 (1973), reviewed the legislative history of the TLA and concluded that it was enacted to protect consumers seeking credit by mandating that creditors disclose credit information in a uniform fashion. *Murphy*, 560 F.2d at 209-10. As the *Murphy* court recognized, the TLA serves the "dual purpose" of protecting individuals and preventing socially undesirable practice, but that Congress focused the Act on compensating the individual consumer rather than delivering penal sanctions. *Id.* at 211. Further, the *Murphy* court held, the fact that a statute such as the TLA provides for actual damages and a recovery in excess of actual damages, such as punitives, does not, in itself, lead to the conclusion that the statute is penal in nature.

Therefore, the court concludes that plaintiff's FCRA claim would survive her death if plaintiff's counsel could substitute a party in her place.

### 3. Plaintiff's Kansas Fair Credit Reporting Act Claim

■ The Kansas Fair Credit Reporting Act, ("KFCRA") Kan. Stat. Ann. §§ 50–701 to 722, does not contain a provision providing for the survivability of a claim in the wake of the plaintiff's death. The survivability of plaintiff's KFCRA claim thereby depends on Kan. Stat. Ann. § 60–1801. Plaintiff's KFCRA claim, however, is not a traditional common-law action, nor a cause of action for mesne profits, injury to the person, deceit, fraud, or for death by wrongful act or omission.

Further, as the court discussed in reference to plaintiff's tort claims, plaintiff has not alleged any injury to real or personal estate as a result of defendants' purported actions. Instead, plaintiff's stated damages in her amended complaint assert mental suffering and what appears to be injuries as a result of damage to reputation. Therefore, under Kansas law, plaintiff's KFCRA claim does not survive her death.

## IV. Order

IT IS THEREFORE ORDERED that plaintiff's counsel's Motion to Substitute Parties (Doc. 74) is denied.

IT IS FURTHER ORDERED that Defendants' (1) Joint Memorandum in Opposition to the Motion to Substitute Parties Filed on Behalf of Plaintiff Dorothy M. Lowe; and (2) Joint Consolidated Motion to Dismiss Complaint and Memorandum in Support (Doc. 87), Defendants' Consolidated Motion to Dismiss Amended Complaint and Memorandum in Support (Doc. 108), and Defendant Associates First Capital Corporation's Motion to Dismiss Plaintiff's Amended Complaint and Memorandum in Support Thereof (Doc. 109) are denied as moot.[1]

IT IS FURTHER ORDERED that this case is hereby dismissed in its entirety.

---

1. The court's analysis of the survivability of plaintiff's claims, as challenged by defendants' collective motions to dismiss, remain dicta at this point but would be effective law if a party were substituted for deceased plaintiff.